Argued July 18, decided August 1, 1911.

## WALLACE v. McDANIEL.

[117 Pac. 314.]

DIVORCE—OPERATION—RIGHT TO MARRY—STATUTE—CONSTRUCTION.

1. Section 515, L. O. L., providing that a decree declaring a marriage dissolved shall terminate such marriage, except that neither party shall be capable of contracting marriage with a third person, and, if he or she does so contract, shall be liable therefor as if such decree had not been given, until the suit has been heard and determined on the appeal, and if no appeal be taken, until the expiration of the time allowed for appeal, is, with respect to the prohibition against remarriage, penal in character, as distinguished from its remedial feature, and should, in view of Section 799, subd. 30, L. O. L., declaring that it will be presumed that a man and woman deporting themselves as husband and wife are married, and Section 723, providing that where a statute is susceptible of two interpretations, one in favor of natural rights, and the other against it, the former must prevail, marriage being a natural right, and Act 1901, p. 173, § 1 (Section 7033, L. O. L.), validating certain marriages made within less than six months following a decree of divorce, be given a liberal construction.

DIVORCE—OPERATION—RIGHT TO MARRY—STATUTE.

2. Where a husband obtained by default a decree of divorce on September 12th, the wife's marriage to a third person on March 12th following was not void under Section 515, L. O. L., providing that parties shall not marry until an appeal has been had, or the time therefor has expired; for in this case there would be less than a day in which to file the appeal, and, as the wife alone was entitled to appeal, she could waive her right and validly marry a third person.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Elmer Wallace against Mary E. McDaniel, Walter Bowman and William Bowman, involving the title to certain real property. The case originally was commenced by the defendants against plaintiff as an action for the possession of lot 11 and the west two feet of lots 12 and 13, block 15, on Williams Avenue, Portland, Oregon.

It appears that Ida M. Wallace, the intestate, first married John Endecott, from whom she separated; there being no children as the issue of their marriage. On September 3, 1903, John Endecott commenced a suit for divorce against Ida M. Endecott, his wife, in the circuit court for Umatilla County. On September 8, 1903, Mrs.

Endecott appeared by her attorney and filed a demurrer to the complaint, which was, on the 12th day of September, 1903, overruled, and she declined to further plead. Thereupon the court heard the evidence and rendered a decree of divorce in favor of plaintiff, John Endecott, against defendant, Ida M. Endecott. On March 12, 1904, at about 9:30 P. M., the plaintiff herein, Elmer Wallace, and Ida M. Endecott, the divorced wife of John Endecott, intermarried at Portland, Oregon, where they resided together as husband and wife until the death of the latter on October 19, 1905. A child, which died prior to the death of the intestate, was born as the· issue of their marriage, and the intestate left neither father nor mother living.

The plaintiff filed a cross-complaint in equity, claiming title as the heir of his wife, Ida M. Wallace, formerly Ida M. Endecott, the intestate, and the defendants claim to inherit the property in question as her sister and brothers and heirs. Plaintiff alleges that lot 11, block 15, was purchased on August 6, 1903, for $2,100, with the joint funds of himself and Ida M. Endecott, for the mutual benefit of both; that thereafter plaintiff purchased and paid for the west two feet of lots 12 and 13 of block 15, and made improvements thereon; the total amount paid by plaintiff being $665.

The defendants make allegation that the intestate was their sister; that her marriage, on March 12, 1904, occurred prior to the expiration of the six months following the granting of the decree of divorce in the suit between her and John Endecott, and that her second marriage to Elmer Wallace, the plaintiff, was therefore void, and that on that account they (the defendants) are her lawful heirs, and entitled to the said real property.

The trial court rendered a decree in favor of defendants, except as to an equitable interest in the property, amounting to $665, in favor of plaintiff. Both parties appeal.                    MODIFIED AND AFFIRMED.

For defendants and appellants there was a brief over the names of *Mr. William D. Fenton, Mr. Rufus A. Leiter,* and *Mr. Ben C. Dey,* with an oral argument by *Mr. Dey.*

For plaintiff and cross appellant there was a brief over the names of *Mr.Cicero M. Idleman, Mr. John Van Zante* and *Mr. Albert H. Tanner* with oral arguments by *Mr. Van Zante* and *Mr. Tanner.*

MR. JUSTICE BEAN delivered the opinion of the court.

The statutes of this State, relating to marriage and divorce, provide as follows:

"Section 501. A husband or wife may maintain a suit against the other for dissolution of the marriage contract, or to have the same declared void, as provided in this chapter."

"Section 515. A decree declaring a marriage void or dissolved at the suit or claim of either party shall have the effect to terminate such marriage as to both parties, except that neither party shall be capable of contracting marriage with a third person, and if he or she does so contract, shall be liable therefor as if such decree had not been given, until the suit has been heard and determined on appeal, or if no appeal be taken, the expiration of the period allowed by this code to take such appeal."

"Section 550, subd. 5. An appeal to the Supreme Court, if not taken at the time of the rendition of the judgment or decree appealed from, shall be taken by serving and filing the notice of appeal within six months from the entry of the judgment, order or decree appealed from. * *"

"Section 502. All marriages which are prohibited by law on account of consanguinity between the parties, or on account of either of them having a former husband or wife then living, or on account of either of them being one-fourth or more of negro blood, shall if solemnized within this State, be absolutely void."

Section 7017, subd. 1, provides that a marriage is prohibited "when either party thereto had a wife or husband living at the time of such marriage."

It is contended upon the part of plaintiff that the marriage between himself and the intestate was valid for three reasons:    (1) The marriage, even if within the six-month period, was not void, but only voidable; (2) the decree of divorce, for want of an answer, was rendered upon default; there was no appeal, and consequently Section 515, L. O. L., has no application thereto; (3) the time allowed for appeal from the decree of divorce had expired, and no appeal was possible at the time the second marriage took place.

In the case of *McLennan* v. *McLennan*, 31 Or. 480 (50 Pac. 802: 38 L. R. A. 863: 65 Am. St. Rep. 835), where the plaintiff, a divorcee, contracted a marriage with a third person 22 days after her decree of divorce had been rendered, and prior to the expiration of the time for taking an appeal in the suit, it was held that her subsequent marriage was absolutely void, approving the case of *Wilhite* v. *Wilhite*, 41 Kan. 154 (21 Pac. 173), in which a second marriage, contracted by one of the parties with a third person about two months after the decree of divorce from which there was a right of appeal, was held to be void.  In *State* v. *Leasia*, 45 Or. 410 (78 Pac. 328), however, the decision was that, in view of the provisions of the statute, no appeal could be taken from a default decree, and that a final order of divorce, entered for want of an answer, operates to terminate at once the marriage relation, so that thereafter in a criminal case the woman is a competent witness against the man.   In the suit in which the decree was rendered, which was in question in the case referred to, the defendant had failed to answer, but thereafter gave notice of appeal and filed an undertaking, as required by law.   It was contended upon the part of defendant that the decree of divorce did not operate to sever the marital relations of the parties until finally determined upon the appeal; that under the existing conditions, at the time of the trial of

the criminal action, the parties were to all intents and purposes husband and wife. Mr. Justice WOLVERTON, in this connection, remarks:

"Whatever might be the effect of an appeal regularly and duly taken in suspending or intermitting the operation of the decree of the trial court while the appeal is pending, * * it is perfectly manifest that an attempted appeal, where none lies, could have no possible effect upon the finality of the decree sought to be revised. No appeal lies from a judgment or decree given by confession or for want of an answer; citing Section 548, B. & C. Comp.; *Fassman* v. *Baumgartner*, 3 Or. 469; *Smith* v. *Ellendale Mill Co.*, 4 Or. 70; *Trullenger* v. *Todd*, 5 Or. 36; *Rader* v. *Barr*, 22 Or. 495 (29 Pac. 889); *Askren* v. *Squire*, 29 Or. 228 (45 Pac. 779). Having failed to appear in the divorce proceedings, Leasia was wholly without the right of appeal, and any attempt that he might have made in that direction was ineffectual to carry the case to the higher tribunal, and, a *fortiori*, was unavailing to disturb the final effect of the decree itself, which terminated the marriage as to both of the parties. Section 515, B. & C. Comp. There being no appeal, the decree became operative and finally effective when rendered, so that the objection is not well assigned; Mrs. Leasia not being the wife of Leasia at the time of the occurrence of the events about which inquiry was made."

1. At the institution of the suit by John Endecott against Ida M. Endecott, the summons was served upon the district attorney, but the State filed no answer and made no appearance. The only party, therefore, who possibly had the right to appeal was Mrs. Endecott. In the consideration of this cause, it is unnecessary to determine what effect such a decree would have upon a subsequent marriage, entered into at an appreciable period prior to the expiration of the usual time for taking an appeal. Rather it is necessary to determine what construction should be placed upon Section 515, L. O. L., prohibiting a subsequent marriage of either of the parties to the decree with a third person. For such purpose, as contradistinguished from providing a remedy upon

appeal, this section is penal in character. These sections of our statute should receive a reasonable construction.

"The general purpose or aim of a statute may be remedial, as where they provide punitive compensation to the injured party. But the provisions that enforce the wrong for which a penalty is provided, and those which define the punishment, are penal in their character and are construed accordingly. A statute may be remedial in one part and penal in another. And the same statute may be remedial for certain purposes, and liberally construed therefor, and at the same time be of such a nature, and operate with such harshness upon a class of offenders subject to it, that they are entitled to invoke the rule of strict construction." 2 Lewis' Sutherland, Stat. Construct. (2 ed.) § 337.

See 36 Cyc. 1180 *et seq.* 2 Lewis' Sutherland, Stat. Construct., also says (Section 516) :

"A statute should be so construed as to give a sensible and intelligent meaning to every part, to avoid absurd and unjust consequences, and, if possible, so as to make it valid and effective. [Quoting from *Wheeler* v. *Wheeler,* 134 Ill. 522, 530 (25 N. E. 588, 590: 10 L. R. A. 613).] 'It is familiar that if the words employed are susceptible of two meanings, that will be adopted which comports with the general public policy of the state, as manifested by its legislation, rather than that which runs counter to such policy.' "

As somewhat analogous to the case at bar, and indicative of the policy of the law as administered by the courts, let us notice as administered by the courts, let us notice the following authorities: *Merriam* v. *Wolcott,* 61 How. Prac. (N. Y.) 377, 392, a case in which $25,000 worth of property was involved, in addition to the rights and interests of the parties, was where a wife commenced an action for divorce in the state of Illinois. Supposing that a decree had been rendered, about two hours before it actually was, she was married in good faith to a third person, and this second marriage was held to be valid (2 Nelson, Divorce & Separation, § 579), concerning

which the court said: "And, as the said marriage was in fact consummated by immediate and continued cohabitation of these parties as husband and wife, the courts of all the states in this country, I think, would, in aid of such marriage and to sustain its validity, presume a further or subsequent marriage of said parties, if need be, and would not allow either of said parties to disown such marriage to establish that they had, since it was solemnized in form, lived in a known and avowed state of prostitution and adultery, within the sense of *Collins* v. *Collins* (80 N. Y. 9)"—citing and approving *Hynes* v. *McDermott,* 91 N. Y. 451, 459 (43 Am. Rep. 677), wherein it is observed:

"The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastary."

In *Re Estate of Megginson,* 21 Or. 387 (28 Pac. 388: 14 L. R. A. 540), Mr. Justice BEAN, discussing the burden of proof, makes the statement that it "is on the party objecting to the validity of such a marriage; * * " while Bishop, Marriage & Divorce (6 ed.), § 457, reads as follows:

"When a marriage, therefore, has once been shown, however celebrated, whether regularly or irregularly, or however proved, whether directly or by circumstantial evidence, the law raises a strong presumption in favor of its legality, so that the burden is with the party objecting, throughout, and in every particular, to prove, against the constant pressure of this presumption of law, that it is illegal and void. And it has been considered that the validity of a marriage cannot be tried like any other question of fact, which is independent of presumption, because the law, besides casting the burden of proof upon the objecting party, will still presume in favor of the marriage, and this presumption increases in strength with the lapse of time through which the parties are cohabiting as husband and wife. It being for the highest good of the parties, of the children, and of the community, that all intercourse between the sexes in its nature matrimonial should be such in fact, the law, when administered

by enlightened judges, seizes upon all presumptions both of law and of fact, presses into its service all things which can help it in each particular case, to sustain marriage and repel the conclusion of unlawful commerce."

The same author, at section 305, remarks:

"* * In divorce law, we are to consider more the interests of the public at large than of particular individuals. And if a punishment is to be imposed for any crime, especially, therefore, for a matrimonial one, it should be of a nature calculated to benefit, not to prejudice, the public."

It is a presumption of law "that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage." Section 799, subd. 30, L. O. L.; *Ollschlager Estate* v. *Widmer,* 55 Or. 145 (105 Pac. 717). Marriage is a natural right.

"Where a statute is equally susceptible of two interpretations, one in favor of natural right, and the other against it, the former is to prevail." Section 723, L. O. L.

The sections of our statute referred to, and considering the legislative intent at the time of their passage, section 1 of the act of 1901, p. 173 (Section 7033, L. O. L.) validating and making legal certain marriages, indicates that a liberal construction should be given thereto. This act of 1901 provides that:

"All marriages solemnized by the citizens of this State prior to the first day of August, 1898, being otherwise valid, are hereby declared legal and valid and of binding force as to all parties, notwithstanding that such marriage may have been contracted within six months following a decree of divorce entered as to either party to such marriage contract; *provided,* that this act shall not in any way affect the legality of any marriage when a decree of divorce affecting either party has been appealed from and not finally determined, or when the decree is for any reason incomplete or not final."

Sig. 13

2. As defined by Am. & Eng. Enc. of Law (2 ed.) vol. 8, p. 739:

"It is a general rule in judicial proceedings that fractions of a day are not regarded, but such proceedings take effect in law from the earliest period of the day upon which they originated and came in force."

The same authority, at page 742, observes in substance, however, that this general rule, relative to there being no fractions of a day, and that the day on which an act is done or an event happens must be entirely included or excluded, is not absolute, but that, "where from the nature of the case justice requires it, fractions of a day are reckoned." The court ruled, in *Voorhees* v. *Minor,* 10 Ohio Cir. Dec. 681, that an agreement, made on April 2, 1898, that execution should not be levied for 10 months was not violated by the levy of the execution on February 2, 1899, as the day on which the agreement was made might be included and counted as a part of the specified time, relative to which Mr. Justice SMITH observes: But we are of the opinion that the claim of the counsel for the plaintiff that there is a wide difference between a contract or a law providing a period within which a thing must be done, and a contract or law providing a period beyond which a thing may be done, is well founded, and that, while in the first case supposed there is a great conflict of authorities as to whether the first day shall be included and the last day excluded, or the converse, in the second case the great weight of authority is that the first day is included"—also citing *Griffith* v. *Bogert,* 59 U. S. (18 How.) 158 (15 L. Ed. 307), and *Taylor* v. *Brown,* 147 U. S. (40 Davis) 640 (13 Sup. Ct. 549: 37 L. Ed. 313). The first case involved the construction of a statute of the State of Missouri, authorizing an execution against the lands and tenements of a deceased person, but providing that no sale should be made until after the expiration of 18 months from the date of the letters testamentary or letters of administra-

tion.   The letters of administration were dated Novem-
ber 1, 1819, and the sale was made on May 1, 1821, and
the transaction, as decided in an interesting opinion by
Judge GRIER, was valid.   The latter case (*Taylor* v.
*Brown,* 147 U. S. (40 Davis) 640 (13 Sup. Ct. 549: 37
L. Ed. 313), arose from a United States statute, which
provided that lands acquired thereunder by any Indian
should be and remain inalienable for a period of five
years from the date of the issue of the patent therefor.
The patent in question was dated June 15, 1880, and the
date of the conveyance by the Indian was June 15, 1885,
and his conveyance was held to be good; the day the
patent was issued being included in the computation of
time—five years.

Mrs. Endecott was the only party who had the right
to appeal, if, for the purpose of argument, it should be
conceded that she had such a right.   Had there been an
answer filed and the case contested, there remained but
two and one-half hours of the last day upon which an
appeal could have been taken in the prior suit by any
party, under any circumstances.   In order to take such
an appeal, the notice must have been served and filed
in the circuit court at Pendleton, Umatilla County, several
hundred miles distant from the place of her marriage,
which was after business hours and past the time for
the county clerk's office to be open, thus making such a
proceeding practically impossible.   Mrs. Endecott knew
at that time that no appeal would or could be taken, and,
if necessary, could, we think, without violating either
the letter or the spirit of the law, waive her right of
appeal for two and one-half hours, and legally marry a
third person.   *Moore* v. *Floyd,* 4 Or. 260; *Portland Con-
struction Co.* v. *O'Neil,* 24 Or. 54 (32 Pac. 764) ; *Ehrman*
v. *Astoria Ry. Co.,* 26 Or. 377 (38 Pac. 306: 2 Cyc. 656).

From the facts and circumstances in this case, it is
evident there was no evasion or violation of the statute
on the part of plaintiff, Elmer Wallace and Ida M.

Wallace, in contracting their marriage. Both appear to have acted in good faith, believing they had a legal right to intermarry, and no improper motive can be attributed to either. Their marriage was thereafter consummated by cohabitation as husband and wife, which continued until the death of Mrs. Wallace, and one child was born to them, whose legitimacy is in question.

At the time of the marriage of Elmer Wallace and the intestate, John Endecott was not the husband of Ida M. Endecott. The plaintiff is therefore the heir at law of his wife, Ida M. Wallace, and entitled to all of the said property.

The decree of the lower court will therefore be modified accordingly.    MODIFIED.