LAND, J.
S. C. Hostetter died intestate in 1910, leaving a surviving widow, who was appointed administratrix of his succession. There were no children of the marriage, and the husband’s estate was inherited by his brother and sisters. It appears that three lots of ground pixrchased during the ixiarriage were excluded from the succession inventory on the objection of the widow, and that subsequently the heirs at law ruled the widow to have the inventory corrected so as to include said lots. Eor answer to the rule the widow admitted that two of the lot's beloxiged to the community, but averred that the third lot' was her separate property, and that the heirs of her husband were estopped to deny her title. The rule was tried and made absolute. Mrs. Hostetter has appealed.
In April, 1901, W. H. B. Croorn sold to Mrs. Jessie M. Hostetter, wife of S. C. Hostetter, duly authorized by her husband, and “purchasing with her own separate paraphernal funds, on her own account, axxd not for the community existing between herself and her husband,” a tract' of land near the town of Mooringsport, parish of Caddo, containing 10 acres, with all the buildings and improvements thereon, for the price of $500 paid in cash. About the same time S. C. Hostetter purchased in his own name several other tracts of land in the same vicinity.
The subsequent discovery of oil and gas in the Caddo fields made all of these lands very valuable. Mrs. Hostetter, duly authorized by her husband, in the year 1908, leased the tract purchased in her name to an oil company for a stipulated royalty, and in 1909 extended said lease to March 1,1910.
In January, 1910, Mrs. Hostetter sued her husband for a separation from bed and board on the grounds of habitual intemperance, ill treatment, et'c. The petition inter alia contained the following allegations:
“Petitioner further represents that she and her said husband own considerable property, real and personal, in above said parish, all of which is community property, and that same should be partitioned between them in kind, and that an inventory should be taken to serve as -a basis for said partition. * * *
“She further represents that it is necessary for her to leave home, and that a domicile should be assigned to her.
“She further represents that they have an income from rents of property and oil leases of about $275 per month, and she prays to be allowed as alimony from said income the sum of $100 per mouth.”
The judge ordered that Mrs. Hostetter be authorized to prosecute the suit and stand in judgment, that she be allowed alimony in the sum of $100 per month, and that she bé assigned a domicile as prayed for in her petition. On the next day after the petition was filed, an ixxventory was made of all the property belonging to the plaintiff and defendant in the suit, including the tract of 10 acres now in controversy.
The defendant was cited to answer the demand contained in the petition, but his death a few days later abated further proceedings.
[1] On the trial of the case it was proved, over the objection of counsel for Mrs. I-Iost'etter, that the lot in question was purchased with funds belonging to the community.
[2] The first question in logical order is whether the recitals of the deed estop the heirs of the husband to deny the title of the wife.
In Succession of Bellande, 42 La. Ann. 241, 7 South. 535, it was held that a recital in a deed to the wife that' the purchase was made “with her own separate and paraphernal funds for herself, her heirs and assigns,” absolutely estopped the husband to deny the verity of the recitals, in the absence of proof of error, fraud, or violence. The court cited Maguire v. Maguire, 40 La. Ann. 579, 4 South. 492; Kerwin v. Insurance Co., 35 La. Ann. 33. See, also, Brown v. Stroud, 34 La. Ann. 374, and Succession of Wade, 21 La. Ann. 343.
The next question is whether the judicial admission of the wife as to her title to the property is biuding on her. The wife appear *471 ed in court against her husband as a litigant claiming not only a separation from bed and board, but a partition of all the property standing in their names on the records of the parish. . She freely and voluntarily admitted that the property in controversy belonged to the community existing between her and her husband.
The wife was authorized by law to sue in her own behalf for a separation from bed and board, and a partition of the community property. The suit was against the husband, and against the interests of the community, and was for the sole benefit of the wife. The expenses of the litigation such as attorney fees and costs were payable by her out' of her separate estate. Tucker v. Carlin, 14 La. Ann. 734. Acting under the advice of learned counsel, the wife in her petition judicially admitted that the property in question belonged to the community. In the absence of error of fact, the confession makes full proof against her. C. C. 2291. The wife, like other litigant's, is bound by her judicial confessions, unless'she can show error of fact, or that she has bound herself with or for her husband, or for the community. Surely the wife has the capacity to plead the truth in matters relating to her property interests. She knew that thé land in question was not paid for with her paraphernal funds, and, when it became necessary for her to assert her property rights, she had the honesty to admit that the land belonged to the community. Her voluntary judicial admissions contradict the recital of the deed of purchase that the property was paid for with her paraphernal funds. On the law and the facts the property, although purchased in her name, fell into the community. O. O. 2402 provides that the community consists, among other things, “of the estate which they may have acquired during the marriage, either by donation made jointly to' them both, or by purchase, or in any other similar way, even though the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase.” Jurisprudence has excepted purchases made by the wife for the purpose of reinvesting her paraphernal funds, and similar purchases by the husband where the purpose is expressly declared in the act of conveyance. It would seem, however, that, where the purchase price was paid with community funds, the property would necessarily fall into-the community. It follows that the whole case of the widow hinges on the question of estoppel vel non. In none of the cases cited by her counsel does it appear that the wife subsequently judicially admitted that t'he property belonged to the community. That the judicial admissions of the wife in a suit against her husband for a separation of property bind her was held in Dickson v. Dickson, 33 La. Ann. 1370, and in Burns v. Thompson, 39 La. Ann. 377, 1 South. 913. In the latter ease lands had been purchased in the name of the wife, and partly paid for with her paraphernal funds. In the wife’s subsequent suit for a dissolution of the community, she alleged that the husband was indebted to her for the funds thus invested, and the court held that such allegation debarred her of the right to claim the property. The argument that the judicial allegations of the wife in a suit' against her husband estops her as to third persons, but not as to her husband, is sound neither in law nor morals. The protection of the wife does not require that she should be relieved of the legal consequences of pleading the truth in a suit against her husband. In suits between the spouses authorized by law, the wife is as much bound by her allegations as is the husband. In such litigation the wife is a free agent acting against her husband in her own separate interest; and any theory of marital coercion would nullify the right of the wife to sue and stand in judgment.
*473 Estoppel against estoppel sets the matter at large where the deed is encountered by another instrument of equally high rank, inconsistent with the same, and between the same parties. See Bigelow on Estoppel (5th Ed.) p. 360. This court has held that judicial admissions are the strongest and highest evidence against the party making them. Gaudet v. Gauthreaux, 40 La. Ann. 189, 3 South. 645. The recital in the deed that Mrs. Hostetter purchased with her paraphernal funds is nullified by her judicial allegation to the contrary. As a matter of fact the recital was false, and the allegation was true.
Judgment affirmed.