Argued February 7, affirmed March 11, 1924.

## FRED C. TWIGGER *v.* MARTHA TWIGGER.

(223 Pac. 934.)

**Marriage—Complaint in Ejectment Held to Insufficiently Plead Invalidity of Marriage of Defendant in Other State.**

1. In ejectment under Section 327, Or. L., by a son claiming as father's heir, complaint alleging that a marriage was prohibited in other state "when either party thereto has a wife or husband living at the time of such a marriage," *held* insufficient to plead invalidity of father's marriage to defendant in such other state, on the ground that defendant had other husband at time of marriage, in view of other allegations that defendant was divorced from such other husband at such time.

**Pleading—Plaintiff's Pleading Strictly Construed Against Him on Demurrer.**

2. Plaintiff's pleading must be strictly construed against him when assailed by demurrer.

**Marriage—Particular Allegation Held Necessary in Complaint Attacking Validity of Marriage Contracted Six Months After Divorce of Party.**

3. In ejectment by son claiming as father's heir, complaint attacking validity of father's marriage to defendant within six months after defendant had been divorced from former husband, in violation of Section 515, Or. L., was required to show that the marriage was not in all other respects regular, in view of Section 9742, validating marriages entered into before expiration of six months from date of divorce decree, where in all other respects regular.

**Marriage—Curative Act Held Applicable to Marriage in Other State.**

4. Section 9742, Or. L., validating marriages, where in all other respects regular, entered into before expiration of six months from date of decree divorcing one of the parties, prohibited by Section 515, *held* applicable to marriage entered into in other state.

---

See 4 C. J., p. 1170; 21 C. J., pp. 1088, 1089; 30 C. J., p. 555; 31 Cyc. 555.

Marriage—Recitals in Deed Held Conclusive as to Validity of
Marriage on Plaintiff Claiming Under Such Deed.

5. Complaint in ejectment by son claiming as father's heir *held*
insufficient to plead invalidity of father's marriage to defendant,
in view of deed attached to complaint, conveying the land to the
father and the defendant, and reciting that they were husband
and wife, it being conclusively presumed under Section 798, Or. L.,
in view of such recital in deed, that the father and the defendant
were husband and wife at the time of the conveyance, though deed
did not expressly create an estate by the entirety, notwithstanding
Sections 9352 and 9936.

Husband and Wife—Deed to Husband and Wife Creates Estate by
Entirety.

6. Deed to husband and wife creates an estate by the entirety.

Appeal and Error—Rulings on Pleadings Held not Cause for Re-
versal Where Appellant not Entitled to Succeed in Any Event.

7. In ejectment by son claiming as father's heir, attacking
validity of father's marriage to defendant, in which court sus-
tained a demurrer to the complaint, and awarded judgment for
the defendant on plaintiff's failure to plead over, the Supreme
Court will not reverse the judgment on the ground that the com-
plaint in its first two paragraphs stated a cause of action, where
deed conveying the land to the father and the defendant recited
that they were husband and wife at the time of the conveyance,
making it manifest that plaintiff has no cause of action because
of conclusiveness of recital as to validity of marriage under Sec-
tion 798, Or. L., in view of Section 556, providing that a judgment
shall only be reversed or modified for errors substantially affecting
the rights of the appellant.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the name of
*Mr. Harry G. Hoy,* with oral arguments by *Mr. Ros-
coe P. Hurst* and *Mr. Will H. Masters.*

For respondent there was a brief and oral argu-
ment by *Mr. James P. Stapleton.*

BURNETT, J.—The allegations of the complaint
upon which this cause was heard in the Circuit Court
are as follows:

"1. That plaintiff is the owner in fee simple, and
entitled to the immediate possession, of the following

mentioned and described real property situate in Multnomah County, State of Oregon, to wit:

"An undivided one-half of Lots 9 and 10, in Block 23, in Columbia Heights, according to the plat and dedication thereof on file and of record in the office of the county clerk of said county.

"2. That the defendant wrongfully withholds the said real property, and the whole thereof, from the said plaintiff, and denies his right thereto, or to any part thereof, and denies that plaintiff has any right, title or interest in or to the said real property or any part thereof whatever.

"3. That plaintiff acquired his title to said real property by descent from his father, Fred C. Twigger, or F. C. Twigger, who died intestate in Multnomah County, Oregon, on or about the —— day of May, 1921, and who, at the time of his death was the owner of an undivided one-half of said real property. That plaintiff is the sole heir at law of said F. C. Twigger, deceased, said F. C. Twigger having died unmarried and without issue other than one son, this plaintiff, his surviving.

"4. That plaintiff is informed and believes that defendant claims to be the sole and exclusive owner of the said real property, and the whole thereof, by reason of the form of the deed by which the said property was conveyed to plaintiff's father and said defendant (a copy of which said deed is hereunto annexed, marked Exhibit 'A,' and made a part hereof), and by reason of her further claim that she is the surviving spouse of the said father of this plaintiff, namely, F. C. Twigger, deceased, but that said claim is without any justification or foundation in fact or in law, as more particularly appears from the following recital of facts, to wit:

"On or about the 18th day of July, 1914, said defendant being at said time the lawful wife of one A. J. Ward, a decree of divorce, or pretended decree of divorce from said A. J. Ward was awarded the said defendant by the Circuit Court of the State of Oregon for Clackamas County. That within six months from

and after the granting of said decree, and, to wit, on the 31st day of the same July, 1914, said defendant, in the City of Stevenson, State of Washington, entered into a contract, or pretended contract of marriage with the said F. C. Twigger, the father of this plaintiff. That at the time of the said marriage, or pretended marriage of said Martha Ward, the above-named defendant, with the said F. C. Twigger, as aforesaid, the said A. J. Ward, husband of the said Martha Ward was still living. That at and prior to the said marriage, or pretended marriage, of said defendant with the said F. C. Twigger, and continuously ever since the enactment thereof, Section 7151, Remington's Codes & Statutes of Washington, being the compiled laws of the said State of Washington, provided, and still provides, that certain marriages are prohibited, particularly including any marriage when either party thereto has a wife or husband living at the time of such marriage; and such has been the law in force in the said State of Washington continuously since some time prior to the said marriage, or pretended marriage of said defendant with the said F. C. Twigger, the father of this plaintiff; and no act validating, or attempting to validate, such prohibited marriages has ever been enacted by the State of Washington since the said marriage, or pretended marriage, of said defendant to the said F. C. Twigger. That immediately after the performance of the said marriage ceremony in the said State of Washington, and, to wit, on or about July 31, 1914, defendant and said F. C. Twigger, returned to the State of Oregon, where they resided together continuously until the death of F. C. Twigger, hereinbefore alleged. That some time after their said return to Oregon said F. C. Twigger purchased from one Mary E. Reeves, a widow, the real property hereinbefore described, taking and receiving from the said Mary E. Reeves, the then owner of said real property, the deed a copy of which is hereunto attached and marked Exhibit 'A.'"

So far as material to the consideration thereof, the deed mentioned in the complaint reads thus:

"KNOW ALL MEN BY THESE PRESENTS, That I, Mary E. Reeves, (a widow) of Portland, State of Oregon, being of lawful age in consideration of ten ($10.00) Dollars to me paid by F. C. Twigger and Martha Twigger, Husband and Wife of Portland, State of Oregon, do hereby grant, bargain, sell and convey to F. C. Twigger and Martha Twigger, their heirs and assigns, all the following bounded and described real property situate in the County of Multnomah, State of Oregon.

"All of Lots numbered Nine (9) and Ten (10), Block numbered Twenty-three (23) in Columbia Heights in City of Portland as shown by the duly recorded plat.

"To HAVE AND TO HOLD the above-granted premises with all the rights, easements and appurtenances thereto belonging unto the said F. C. Twigger and Martha Twigger their heirs and assigns forever. * * * "

The Circuit Court sustained a general demurrer to this complaint and, as the plaintiff did not plead further, awarded judgment in favor of the defendant from which the plaintiff appeals, assigning as error the sustaining of the demurrer.

The requisites of a complaint in ejectment are thus set down in Section 327, Or. L.

"The plaintiff in his complaint shall set forth the nature of his estate in the property, whether it be in fee, for life, or for a term of years, and for whose life, or the duration of such term, and that he is entitled to the possession thereof, and that the defendant wrongfully withholds the same from him to his damage, such sum as may be therein claimed. The property shall be described with such certainty as to enable the possession thereof to be delivered if a recovery be had."

The complaint does not claim damages for the detention of the property but that may be waived.

If the complaint had stopped with the first two paragraphs, no question could arise but that it stated facts sufficient to constitute a cause of action, for thus far it contained all the essential elements of the statute just quoted. The pleader, however, has undertaken to declare the defendant's ground of defense incorporating it in the statement of his grievance and it remains to be seen whether he has committed hara-kiri and destroyed his complaint by averring a defense for the opposite party.

1. Turning to the statement of facts which he propounds as the basis of the defendant's claim, we observe that a decree of divorce was awarded to the present defendant in Clackamas County on July 18, 1914, and that she married the plaintiff's father in the State of Washington on the 31st of the same month. If, at that time, she had been divorced from Ward, he was then no longer her husband. It is true that our statutes disqualify divorced spouses from contracting subsequent marriages within six months: Section 515, Or. L. The plaintiff undertakes to apply that disqualification to the marriage in the State of Washington by saying that a marriage there is prohibited "when either party thereto has a wife or husband living at the time of such marriage." This is all the prohibition imputed to the statutes of our sister state, but having already stated that the defendant was divorced from Ward, her marriage would not come within the enactment as pleaded because at that time Ward was not her husband.

As stated, the Washington marriage took place July 31, 1914. The act of the Oregon legislature of

March 3, 1919, codified as Section 9742, Or. L., reads thus:

"All marriages which were in all other respects regular, entered into prior to the passage of this act and before the expiration of six months from the date of a decree dissolving the bonds of matrimony as to one or both of the contracting parties, and there being no existing right of opening or vacating such decree, are hereby declared valid marriages."

2, 3. It is doubtful if there is sufficient in the defense alleged by the plaintiff for the defendant to comply with this curative statute. No facts are stated from which we may conclude that the Washington marriage was "in all other respects regular." For instance, the age of the contracting parties is not stated, neither does it appear but that they were within the prohibited degrees of kindred or of a prohibited race condition and the like, neither is there enough averred concerning the decree of divorce to enable us to determine whether there was any then "existing right of opening or vacating such decree." So far, then, as the defendant's case, as stated by the plaintiff, depends upon the Washington marriage, it probably would not be sufficient to overcome the complaint if it had been the actual answer of the defendant tested by a demurrer. But we must construe the plaintiff's pleading most strictly against him when assailed by demurrer. We have seen that the Washington statute as pleaded was not violated by the marriage because it affirmatively appears that the woman then had no prior husband. As to our own curative statute, the burden rests upon the plaintiff, who attacks the Washington marriage, to show by averment wherein it fails to come within the embrace of that enactment. It would seem, therefore, that the matter stated after the first two paragraphs con-

futes the good part of the complaint because, as we shall see, the deed conveyed an estate by the entirety giving to the surviving spouse the whole estate in severalty.

4. Passing this somewhat critical estimate of the pleading in question, however, we come to the merits of the case as presented at the argument. There are two questions for consideration: 1. The validity of the Washington marriage; and 2. The estate conveyed by the deed, a copy of which is attached to the complaint as an exhibit. It is true that in *McLennan* v. *McLennan,* 31 Or. 480 (50 Pac. 802, 65 Am. St. Rep. 835, 38 L. R. A. 863); *Sturgis* v. *Sturgis,* 51 Or. 10 (93 Pac. 696, 131 Am. St. Rep. 724, 15 L. R. A. (N. S.) 1034, note); and *Hooper* v. *Hooper,* 67 Or. 187 (135 Pac. 205, 525), this court has decided that where parties resident of this state, one or both of whom have been divorced by our courts within six months, go into the State of Washington, are there married and return to this state to reside, the marriage is void. This results from a construction of the divorce statutes as they then stood. That is to say, the legislation in its then condition assumed to invalidate for all purposes in this state a marriage contracted in a sister state under the circumstances mentioned. None of those decisions, however, go so far as to say that the marriage would be otherwise than valid for all purposes in Washington. Granting that the legislation on which the McLennan case and those following it were based was valid and effectual, by the same token we must give effect to the curative statute subsequently passed on March 3, 1919. This is a legitimate conclusion for the reason that if the legislature had power to condemn a marriage contracted in a sister state, it has equal power to approve and vali-

date such a marriage. It is true, indeed, that state laws have no extraterritorial effect, but that principle is foreign to the present purpose. All that any of our legislation has assumed to effect is that for Oregon purposes in the first instance such marriages were void and by the subsequent legislation in the exercise of the same legislative power to say that for those purposes such marriages contracted prior to the passage of the curative act are valid. It is plain, therefore, that if enough were alleged to bring the marriage in question within the embrace of the curative act, it must be held to be valid for all purposes within the State of Oregon or within the range of our statutory enactments.

5. There is yet another consideration operating upon that marriage so as to validate it for the purposes of this case. The plaintiff claims under a deed to his father which he presents as an exhibit attached to his complaint. It is said in Section 798, Or. L.:

"The following presumptions, and no others are deemed conclusive: * *

"3. The truth of the facts recited from the recital in a written instrument, between the parties thereto, their representatives or successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration; * * "

In this very deed under which the plaintiff claims is recited: "F. C. Twigger and Martha Twigger, husband and wife," and the grant is to "F. C. Twigger and Martha Twigger," and finally, the *habendum* is "unto F. C. Twigger and Martha Twigger." In *Orthwein* v. *Thomas,* 127 Ill. 554 (21 N. E. 430, 11 Am. St. Rep. 159, 4 L. R. A. 434), there was drawn in question a deed to Thomas Osborn beginning with this language:

"Whereas, Hannah Ratcliff, wife of William Ratcliff, of said state of Illinois, daughter and heir of the said James Hillman," etc.

The court there said:

"It is manifest that the recitals of fact in this deed operate by way of estoppel upon Thomas Osborn, and after its record in the proper county, August 9, 1827, upon his grantees. As was said in *Pinckard* v. *Milmine,* 76 Ill. 453: 'We recognize the doctrine of estoppel by the recitals in a deed, and that a party claiming under such deed cannot be permitted to deny any fact admitted to exist by such recitals'; citing *Byrne* v. *Morehouse,* 22 Ill. 603, and *Rigg* v. *Cook,* 4 Gilm. (Ill.) 336 (46 Am. Dec. 462); and adding: 'The principle of these cases is, that whatever rights legitimately arise on such admitted facts may at all times be asserted, whether it be to obtain or defend the possession of such rights.' Thomas Osborn would not have been permitted, nor can the appellees, his remote grantees, now be heard to deny the facts recited in this deed, namely, that Hannah Hillman and William Ratcliff were man and wife, and that Susannah Osborne was the daughter of Hannah Ratcliff. Hannah Ratcliff was then a married woman, and Susannah is presumed to to have been born in lawful wedlock, and this presumption must prevail until the legal presumption of legitimacy, and which attaches to every child, is overcome by clear and convincing proof; and the burden of showing illegitimacy is, by the law, cast upon those who allege it."

A well-considered case is *Jacobs* v. *Miller,* 50 Mich. 119 (15 N. W. 42). The plaintiff in ejectment was the grantee of three children of one Margaret Hack. She was divorced in 1859 from their father, Jacob Hack, and afterwards in 1861 she married one Taufkirch, with whom she lived as his wife until 1870 when she died. It appeared in evidence that at the date of this marriage Taufkirch had a living wife in Canada but whether this was known to Margaret does

not appear. During the time she lived with Tauf-
kirch as his wife, some real property was sold at
guardian's sale. The court granting the order re-
cited, "that one Leo E. Taufkirch and his wife" had
offered a sum of money for the property. The order
directed the guardian to execute a conveyance of said
property of said guardian to "Leo E. Taufkirch and
his wife." The deed was executed accordingly to
"Leo E. Taufkirch and Margaret Taufkirch, his wife,
their heirs and assigns." After the death of Mar-
garet, Taufkirch conveyed the property in fee simple
to the defendant, Miller. The court held that this
guardian's deed conveyed to Taufkirch and Margaret
his wife an estate by the entirety which, on her death,
inured to him in severalty, that being the estate he
conveyed to the defendant. The court there said:

"The state of the action necessitates a showing by
parol that Taufkirch and the woman Margaret were
never seized with the estate manifested by the deed,
but took one of a wholly different character. An
estate in common must be made out and developed
not only in opposition to the plain legal import of
the deed, but on oral evidence. This is not con-
sistent with the Statute of Frauds, Comp. 1., § 4692;
*Bullen* v. *Runnels,* 2 N. H. 255.

"By the principles of the common law the legal
effect due to the plain words of a deed cannot be con-
tradicted by parties or privies in any collateral matter
by parol evidence. The terms must stand and receive
their just and legal significance. 2 Whart. Ev.
§§ 1050, 1054, and cases: *Jackson* v. *Foster,* 12 Johns.
(N. Y.) 488; *Jackson* v. *Robert's Exrs.,* 11 Wend.
(N. Y.) 422. The name of the grantee is part of the
deed (2 Rolle's Abr. 43), and where a deed is made
to several individuals without designating in what
proportions they shall hold, they will take in equal
proportions precisely as though it had been detailed
at length in the deed (*Campau* v. *Campau,* 44 Mich.
31; *Treadwell* v. *Bulkley,* 4 Day (Conn.), 395), and

no parol proof can be admitted to give the deed a different effect than such as the words in it legitimately import. *Treadwell* v. *Bulkley, supra; Morse* v. *Shattuck,* 4 N. H. 229; *Gully* v. *Grubs,* 1 J. J. Marsh. (Ky.) 388, 389, 390; 1 Cowen & Hill's Notes, 217, 1428 et seq., 1442, 1444. The case before us is governed by the same principle.

"Among the rules which have become axiomatic is one that a party must be consistent and not contradictory in the positions which he takes. In the language of Lord Kenyon he must not 'blow hot and cold' at the same time. And one of the most important applications of the rule is where a party endeavors to establish a right or title in himself under one provision or implication of a deed or other instrument by ignoring or contradicting another provision or implication which is destructive or fatally repugnant. Now, according to the reason of the rule, which applies as well to deeds as to wills, a person cannot claim under the instrument without confirming it. He must found his claim on the whole and cannot adopt that feature or operation which makes in his favor and at the same time repudiate or contradict another feature or operation which is counter or adverse to it." Citing numerous precedents.

The same doctrine is announced in *Hawley* v. *Dibble,* 184 Mich. 298 (151 N. W. 712). There William Fitzgibbons was the owner of a tract of land which he conveyed to one Budway for a nominal consideration, who thereupon, for like consideration, conveyed the same to "William and Sarah Fitzgibbons, husband and wife." After the death of William, his children by a former wife sued to recover an undivided half of the tract thus conveyed to him and his wife, Sarah, on the ground that at the time William was married to her he had not been divorced from his first wife. The court, however, held that they were bound by the recitals in the deed under which they claim and were estopped to raise the question

about the validity of the marriage. The case is precisely parallel to the one at bar and under our statute which makes recitals conclusive between parties to a deed and their privies is controlling of this action. In the *Succession of Hostetter,* 128 La. 468 (54 South. 961), it was said:

"The first question in logical order is whether the recitals of the deed estop the heirs of the husband to deny the title of the wife.

"In *Succession of Bellande,* 42 La. Ann. 241 (7 South. 535), it was held that a recital in a deed to the wife that the purchase was made 'with her own separate and paraphernal funds for herself, her heirs and assigns,' absolutely estopped the husband to deny the verity of the recitals, in the absence of proof of error, fraud, or violence. The court cited *Maguire* v. *Maguire,* 40 La. Ann. 579 (4 South. 492); *Kerwin* v. *Insurance Co.,* 35 La. Ann. 33. See, also, *Brown* v. *Stroud,* 34 La. Ann. 374, and *Succession of Wade,* 21 La. Ann. 343."

Thus it is plain that in addition to the effect of the validation statute of 1919, the recitals of the deed under which the plaintiff claims show conclusively as against him that his father and Martha, the defendant, were at the time of the execution of that deed husband and wife because it is so recited in the conveyance itself.

In *Bennett* v. *Hutchens,* 133 Tenn. 65 (179 S. W. 629), it is said that:

"It is immaterial that the deed in the present case did not on its face name the grantees as husband and wife; nor is it material that we find in the deed no words used to indicate a purpose in the grantor to create an estate by the entireties; nor a purpose in the grantees that such an estate should be conferred upon them. The estate, by the entireties, upon the execution of the deed, depended on the unity of the husband and wife, under the common law."

This is supported by a long list of citations. To the same effect is *Thornburg* v. *Wiggins,* 135 Ind. 178 (34 N. E. 999, 41 Am. St. Rep. 422, 22 L. R. A. 42); *Hulett* v. *Inlow,* 57 Ind. 412 (26 Am. Rep. 64). In our own reports in the case of *Oliver* v. *Wright,* 47 Or. 322 (83 Pac. 870), this court held that an estate by the entirety was created where the deed ran to two grantees who were at the time husband and wife although that status was not mentioned in the deed. The following sections of Or. L. have been mentioned as affecting estates by the entirety:

Section 9852. "Every conveyance or devise of lands, or interest therein, made to two or more persons, other than to executors and trustees, as such, shall be construed to create a tenancy in common in such estate, unless it be expressly declared in such conveyance or devise that the grantees or devisees shall take the lands as joint tenants."

Section 9936. "A tenant in common may maintain any proper action, suit, or proceeding against his cotenant for receiving more than his just· proportion of the rents or profits of the estate owned, by them in common; and joint tenancy is abolished, and all persons having an undivided interest in real property are to be deemed and considered tenants in common."

6. In the first of these sections the tenants are referred to as "two or more persons." In the next, after abolishing joint tenancy, the phrase is "all persons having an undivided interest in real property." Neither of these expressions can refer to the common-law unity cast upon husband and wife. At common law they were deemed to be a single person. No legislation in this state has abolished that unity. The right of married women to have separate property and control it independent of their husbands has been distinctly recognized by express legislation, but

that singleness characteristic of the relation at common law has never been abolished. It is upon this that the theory of the estates by the entirety is based. Consequently they are not within the purview of the sections just quoted which speak only of a plurality of tenants. It has been held so often in this state that a deed to husband and wife give rise to an estate by the entirety that it has become a rule of property not to be disturbed except by express legislation abolishing the estate. The principle was first established in *Noblitt* v. *Beebe*, 23 Or. 4 (35 Pac. 248), and followed in *Howell* v. *Folsom*, 38 Or. 184 (63 Pac. 118, 84 Am. St. Rep. 785); *Hayes* v. *Horton*, 46 Or. 597 (81 Pac. 386); *Chase* v. *McKenzie*, 81 Or. 429 (159 Pac. 1025).

7. Speaking with strict technicality without reference to the legal effect of the deed propounded by the plaintiff under which he claims, the complaint does contain in its first two paragraphs the statement of a cause of action, if we ignore the labored attempt of the pleader to overturn his own declaration; but having reference to the recitals of the deed that F. C. Twigger and Martha Twigger were husband and wife and the statute making such recitals conclusive between the parties and their privies, it is manifest that the plaintiff has no cause of action. In the trial of his own case on the general issue he would be driven to the introduction of that very deed in evidence. He would be bound by all its terms including its recitals and would not be entitled to give in evidence anything contradictory thereto. Relying upon part of it, he is bound by all of it and could not in any event prevail in the action.

It is said in Section 556, Or. L.:

"Upon an appeal from a judgment, the same shall only be reviewed as to questions of law appearing upon the transcript, and shall only be reversed or modified for errors substantially affecting the rights of the appellant";

The result of the decision of the court below was right in substance, at least so far as the same is based upon the construction of the deed under which the plaintiff claims.   The judgment is affirmed.

AFFIRMED.

BEAN, RAND and COSHOW, JJ., concur.