CHAUVIN v. AMERICAN MUTUAL
LIABILITY INS. CO.

———

(May 11, 1931. Opinion and Decree.)
(July 1, 1931. Rehearing Refused.)

———

Dart & Dart and Leo L. Dubourg, of New Orleans, attorneys for plaintiff, appellant.

Henry & Cooper and John A. Smith, Jr., of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. This suit was originally brought in the name of Mrs. Marie Dubourg Chauvin, Miss Louise Chauvin and Miss Laura Chauvin for compensation for the death of Louis Chauvin, the son of Mrs. Chauvin and the brother of the Misses Chauvin. The petition alleged that on October 8, 1930, Louis Chauvin was electrocuted under circumstances entitling his dependents to compensation from his employer, the E-Z Opener Bag Company of Braithwaite, Plaquemines parish, Louisiana; that he earned $200 a month and contributed $120 per month to the support of petitioners, who were partially dependent upon him; that the defendant, American Mutual Liability Insurance Company, was the insurer of Louis Chauvin's employer; that in accordance with the terms of Act No. 20 of 1914, petitioners are entitled to recover in a direct action against the insurance company. They pray for compensation in the sum of $18 a week for a period of 300 weeks, commencing October 8, 1930, for $100 funeral expenses and for $50 additional as incidental expenses.

Defendant filed an exception of no cause of action as to the right of the Misses Chauvin to claim compensation upon the ground that brothers and sisters have no cause of action when the mother, or father, either or both, are living. The record does not disclose whether this exception was ever disposed of by the court, but, upon the trial of the case, the claim of the two sisters was abandoned and the case proceeded with the mother alone as plaintiff. After a trial on the merits, judgment was rendered in favor of Mrs. Chauvin in the sum of $3 per week for 300 weeks, the first payment to be made as of October 15, 1930. Plaintiff has appealed.

The position taken by plaintiff in argument and in brief in this court is that there should be a recovery in favor of plaintiff of $9 per week for 300 weeks. Defendant denies liability upon the ground that the injury from which Louis Chauvin died was not received in the course of his employer's "trade, business or occupation," as required by paragraph 2 of section 1 of the Workmen's Compensation Act, and, in the alternative, avers that, if there be liability, the actual amount due would not exceed $1.94 per week for 300 weeks, but for the minimum of $3 per week established by the law. (Fuhrmann v. Keenan, 168 La. 642, 122 So. 892.)

The following facts gleaned from the record are pertinent to the question of liability. The E-Z Opener Bag Company built two ornamental brick pillars at the entrance to its plant. The pillars were surmounted by an electric light. A verbal agreement had been entered into between the bag company and the Louisiana Light & Power Company under the terms of which the bag company undertook to run the wire connections from the lights to a pole nearby, and, while engaged in running the wires, Louis Chauvin, who was the electrician of the E-Z Opener Bag Company, was shocked and killed. Defendant argues that Chauvin's employer was engaged in the business of manufacturing paper bags at its plant in the parish of Plaquemines and that, in connecting the wires of the Louisiana Light & Power Company with the ornamental pillars, which were located outside of the plant

of the bag company, Chauvin, at the time of his death, was not engaged in the business of his employer. However, the record shows that Chauvin acted upon orders of his superiors and pursuant to an agreement between his employer and the Louisiana Light & Power Company. It will be presumed that he acted within the scope of his employment. He certainly was not engaged in any private enterprise and there is nothing in the record which would justify us in holding that the installation of the wires was not undertaken in the interest of his employer's business. Labostrie v. Weber, 15 La. App. 241, 130 So. 885.

Section 8, paragraph 2, of Act No. 85 of 1926, p. 116, reads as follows:

"For injury causing death within one year after the accident there shall be paid to the legal dependents of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident."

Without quoting further provisions of the act, suffice it to say that it is conceded that a widowed mother in Mrs. Chauvin's position is a partial dependent and, as such, is entitled to compensation for 300 weeks in a sum equal to such proportion of 32½ per cent of her son's weekly wage as his weekly contribution bore to his total weekly earnings. Chauvin earned $200 a month and he gave his mother $120 a month. His mother was the head of a

household which comprised the following individuals besides the deceased: Two sisters, Misses Louise and Laura Chauvin, three brothers, Vincent, Ernest and Eugene Chauvin. All of the children are majors, with the exception of Eugene, who was 19 years of age. Vincent, who earned $30 a week, gave his mother $15 and Ernest, who earned $25 a week, contributed $10. Eugene, who earned $65 a month, contributed little or nothing. Mrs. Chauvin, whose husband had been dead about 15 years when the suit was tried, maintained the household with the funds contributed by the three boys. One of the sisters, Louise, was an invalid; Laura, the other sister, helped with the housework. The family lived in a home which had been purchased through a homestead and out of the funds contributed to Mrs. Chauvin she paid $30 a month, or $360 a year to the homestead. In addition to this, she paid the Aetna Life Insurance Company an annual premium of $143.76 and to a community burial service company 50 cents a week or $26 a year. Defendant multiplies $120 by 12 to ascertain the yearly contribution to Mrs. Chauvin. From the sum arrived at, $1,440, it is claimed that there should be deducted $529.76, this amount representing the annual homestead and insurance payments of Mrs. Chauvin, thus leaving a balance of $910.24, from which counsel deducts the further sum of $547.50, an arbitrary amount estimated for the room and board of Louise, Laura and Eugene Chauvin at the rate of 50 cents each per day for one year. From the remainder, $362.74, he subtracts a further sum of $1 per week for 52 weeks for the room and board of Louis Chauvin, deceased, thus leaving a balance of $310.74, which he claims to be the sum actually contributed annually to Mrs. Chauvin's support. Counsel then continues his cal-

culations as follows: Dividing $2,400, the annual income of the deceased, by 52, the number of weeks in the year, he gets the figure $46.16. 32½ per cent of this sum amounts to $15. He divides $310.74, the amount he claims to have been contributed annually by deceased, by 52, the number of weeks in the year, and arrives at the figure $5.98. He then multiplies 15 by $5.98 and divides by $46.16, and reaches the figure $1.94, the actual amount which it is claimed Mrs. Chauvin is entitled to recover.

We have followed counsel's mathematics with difficulty and not without some misgiving concerning our complete comprehension. If the compensation law contained a stipulation to the effect that the basis of compensation to be paid dependents of deceased workmen should be the actual amount of profit which such dependents derived from the contribution of the workmen, the argument of counsel and his mathematical deductions would have much force. But we find no such provision in the law, which, as it is written, is based upon the amount contributed to the dependents. Mrs. Chauvin received from her son, Louis, $120 per month. If she had applied that sum for her own maintenance exclusively, there could have been no doubt that it should be the basis for the calculation of the fractional proportion of his earnings which she should receive. The difficulty arises from the fact that Mrs. Chauvin was the head of a household in which there were some eight persons supported by the contributions of her three sons. In other words, all of her children who were earning any money gave what they could toward the maintenance of the family home. Taking the first item, which it is claimed should be deducted—$360 a year paid to the homestead by Mrs. Chauvin—we believe this sum should be ig-

nored, whether the principle of defendant's position be admitted or not, because the home, for the payment of which these monthly sums were given the homestead, belonged to the deceased, Louis, and in addition to the sum he gave monthly, he also provided a home for the family, the rent of which must at least have equalled the amount paid the homestead. As to the insurance premium of $143.76, it appears that this premium was paid for a life insurance policy in which Mrs. Chauvin was named as beneficiary and from which she collected the face value after her son's death. Under the circumstances she benefited by the policy for which this expense was incurred. The same would also apply to the 50 cents a week, or $26 a year paid the community burial service. As to the minor son and major daughters living with Mrs. Chauvin, one of the daughters, by helping her mother with the household in a family of that size, must certainly have earned her way, and as to the other daughter and the son, the daughter being an invalid and the son a minor, the mother was under an obligation to maintain them. Counsel concedes that such would be the case if the children were minors, but says that no obligation rests upon parents to maintain their major children. The following articles of the Civil Code are of interest:

"Art. 227. Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining and educating their children.

"Art. 229. Children are bound to maintain their father and mother, and other ascendants who are in need; and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal.

"They are also bound to render reciprocally all the services which their situation can require, if they should become insane."

Mrs. Chauvin was under a legal obligation to maintain the members of her household, her children, who did not contribute to the establishment.

In the case of Boudreaux v. Myles Salt Co., 11 La. App. 480, 123 So. 907, 908, it was held that no deduction should be made in calculating compensation due a father because of his support of his minor children out of the fund contributed by the deceased son; the father being under a legal obligation to support his minor children. See, also, Heinzelman v. Board of Commissioners, 149 La. 221, 88 So. 798. In the case of In re Peters, 65 Ind. App. 174, 116 N. E. 848 (1917), the appellate court of Indiana, where the compensation law with respect to partial dependency is very similar to our own, the compensation to be paid in such cases being "in the same proportion to the weekly compensation for persons wholly dependent as the amount contributed by the deceased employee to the partial dependent bears to his annual earnings at the time of injury," held that where a father maintained the family out of a common fund, no deduction should be made for the maintenance of his deceased son in determining the amount contributed to his father, and said:

"It is contended that a proper inquiry to be made, where a parent makes application for compensation by reason of being deprived of contributions from the earnings of a minor son, is whether such son was a financial asset to such parent; that the mere fact that the son's earnings entered into the common family fund is not material, unless those earnings exceeded the cost of his maintenance. This contention finds support in certain cases under the English Workmen's Compensation Act, where it is provided that the compensation shall be 'proportionate to the injury to the said dependents,' but it has not met with approval in this country under acts similar to the one by which we are governed.

 *    *    *    *    *    *    *

"It might be contended that it would be unjust to allow compensation to a dependent father, based on the earnings contributed by a minor son, where the father supports such son, without deducting the cost of such support. But in view of the fact that the act in question does not purport to provide a method of determining the actual loss sustained by such father, and require full compensation for such loss, but only assumes to fix an arbitrary amount that shall be paid such father as compensation, based on such son's annual earnings and contributions therefrom to such dependent father, it is manifest there is no basis for such contention. There is no provision in the act for any such deduction, and no language from which such requirement can be inferred. Hence, we conclude, both on reason and authority that the cost of the maintenance of a contributing minor son should not be considered in determining the amount of compensation to which a dependent father is entitled."

. In People's Hardware Co. v. Croke, 66 Ind. App. 340, 118 N. E. 314, 315 (1918), the same court, in considering a similar situation where a mother in charge of a common fund maintained the household, disposed of the contention that certain deductions should be made on that account in the following words:

"The facts show that all the wages of the deceased were placed in the common fund. Such being the case, the basis of the award was not changed by the fact that he (the deceased), as well as other members of the family, received support from the common fund."

In Clingan et al. v. Carthage Ice & Cold Storage Co. et al. (Mo. App.) 25 S. W. (2d) 1084, 1085, decided February 17, 1930, the court, in considering the question of deductions for maintenance of a deceased minor on account of the expense of his board and lodging, said:

"Suffice it to say that our Workmen's Compensation Act makes no provision for such a reduction. It merely provides a

basis of computation by which to determine the amount to be paid, and since no provision is made for any reduction on account of being relieved of the further support of the deceased minor, it is apparent to us that none was intended."

See, also, Dembinski's Case, 231 Mass. 261, 120 N. E. 856.

But, as we have said, the basis for determination of the extent of partial dependency is the amount contributed to the dependent—in this case the mother—and not the profit or the net amount which she derives from her son after allowances for expenses in connection with his living or otherwise. Our law, like the Indiana and Missouri law, makes no provision for any deduction, nor does the law make any inquiry as to the manner in which the dependent spends the contribution. If, for example, the mother in this case had obtained the $120 a month from her son and, refusing to recognize any parental responsibility for the care and maintenance of her family, used the money entirely for her own selfish purposes, it would hardly be argued that there should be any deduction on that account in computing the amount due her. More than that, if she had dissipated the funds supplied by her generous son in extravagant living, the situation would be the same, because the basis of compensation is the contribution of the deceased and not the manner in which it was disbursed. The law, for reasons which have been often stated, is designed to make up, to the extent mentioned in the act, the income derived from the deceased wage-earner, and does not concern itself with the manner in which the dependent expended the funds contributed. Our conclusion is that the basis of computing the compensation due plaintiff is the full amount of his weekly contribution.

But defendant says plaintiff is estopped by judicial admissions in her petition bearing her affidavit to the effect "that at the time of his death, petitioners (the mother and her two daughters) were partially dependent upon deceased for support," and that "the deceased, prior to his death, was contributing to the support of your petitioners the sum of $120 per month out of his wages of $200 per month." Peytral v. Lacourage, 1 Orleans App. 38; Succession of Hostetter, 128 La. 468, 54 So. 961. The alleged effect of these allegations, it is claimed, is to estop Mrs. Chauvin from claiming more than $40, or one-third of the total of $120 which is shown to have been given her each month. In the first place, the petition does not allege that Louis Chauvin contributed the sum of $120 per month in equal proportions, but, in any event, the principle of judicial estoppel has no application here, for the reasons given by Chief Justice Provosty in Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L.R.A. 1915A, 200 Ann. Cas. 1915C, 717, and repeated in Maddox v. Robbert, 158 La. 394, 104 So. 183, 185, to the effect that "judicial allegations operate as estoppels only when they have been acted on by the party invoking them as such." Here the original claim for compensation on behalf of the mother and the two daughters, sisters of the deceased, was abandoned upon the trial of the case after the error of counsel's position in regard thereto had been pointed out by the exception of no cause of action. There was no resulting disadvantage to defendant, nor was the conduct of the defendant in any way influenced thereby. In an excerpt from the Farley case found in Maddox v. Robbert, the following expression of the law, as stated by Greenleaf, is found:

"Admissions which have been acted upon

by others are conclusive against the party making them, in all cases between him and the person whose conduct he had thus influenced."

The plea of estoppel is not well founded.

The plaintiff received from her deceased son $120 per month, or $1,440 a year. Dividing this amount by the figure 52, the number of weeks in the year, we have $27.69 as the amount received each week by Mrs. Chauvin. Dividing $2,400, the total yearly salary of the deceased, by 52, we have $46.15, his weekly wage. If Mrs. Chauvin were totally dependent she would receive 32½ per cent of $46.15, the weekly wage, or $15. Being partially dependent, she is entitled to only a proportionate amount. Mrs. Chauvin should receive a sum equal to "the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident." Chauvin's weekly contribution of $27.69 is 60 per cent of $46.16, his total weekly wage. Consequently, plaintiff is entitled to 60 per cent of $15, or $9 per week for 300 weeks.

For the reasons assigned the judgment appealed from is amended by increasing the sum awarded plaintiff from $3 a week to $9 a week for 300 weeks, and, as thus amended, it is affirmed.

JANVIER, J., concurring. I believe that there should be deducted from the weekly prior contributions made by the deceased son a sum to represent the value of his own board and lodging. However, since the deceased had lived in his mother's home only a small portion of the time there should be deducted so inconsequential an amount that no substantial reduc-

tion would result in this particular case, and I complain only of the establishment of the principle that where a son pays to his mother a regular amount each week or each month, and lives with his mother, the whole sum should be considered as a contribution to her. Part of the amount represents payment for his board and lodging and not contribution.

I concur in the decree.