WALTON v. LOUISIANA POWER & LIGHT CO. et al.*

No. 14787.

Court of Appeal of Louisiana. Orleans.

Feb. 12, 1934.

*Rehearing denied March 12, 1934.

Monroe & Lemann, John May, and Walter J. Suthon, Jr., all of New Orleans, for appellants.

James G. Schillin, of New Orleans, for plaintiff appellee.

Henry & Cooper and Jno. A. Smith, Jr., all of New Orleans, for intervener appellee.

WESTERFIELD, Judge.

This is a suit by a widow in her own behalf and as natural tutrix of her minor children, sounding in damages ex delicto, against the Louisiana Power & Light Company and George D. Boudreaux, its local manager. There was judgment below as prayed for, in the sum of $15,000, and defendants have appealed.

The accident which forms the basis of this suit occurred in the village of Braithwaite, Plaquemines parish, about 9:30 a. m., October 8, 1930. Braithwaite is a small rural community, the inhabitants of which are, or were, for the most part, employees of the E-Z Opener Bag Company, to which we shall hereafter refer to as the bag company. Some time previous to the accident, the local manager of the bag company, who was also a member of the police jury of Plaquemines parish, conferred with other parish officials and with the local manager of the Louisiana Power & Light Company, a public service corporation, to which we shall hereafter refer to as the power company, for the purpose of determining upon a system of lighting the entrance of Braithwaite at a point at which a new road, which had recently been con-

structed, joined the main highway. At that conference it was decided that the entrance would be decorated by two ornamental brick pillars surrounded by large lights, forming an illuminated gateway to the road. The agreement reached at that conference was to the effect that the bag company would erect the ornamental brick pillars, or posts, and connect them by an underground wire to a post of the power company nearby, whence the wire was to be carried through a conduit to a point near the top of the post which was about 35 feet high, where the service or feed wires of the company were located. The parish authorities agreed to pay for the current and the power company to make the connection.

The ornamental posts were erected and the underground connection made and the final execution of the project undertaken on the morning of October 8, 1930, when George Boudreaux, a local representative of the power company, and Louis Chauvin and George Walton, employees of the bag company, met in the vicinity. Boudreaux, equipped with climbing spurs attached to his feet, mounted the pole for the purpose of making the connection with the company's service wires, while Chauvin, on the ground, pushed a flat steel wire known as a "fish line" through the conduit, which had been attached to the post, with the intention of effecting a passage for a permanent wire which was to be tied to the "fish line" and "fished," or pulled, through the conduit. Walton, also on the ground, held the slack of the "fish line," feeding it gradually as Chauvin required it. The "fish line" protruded through the upper opening of the conduit about eight feet, bent backwards over the head of Boudreaux, who was seated on a cross-arm near the top of the pole, and made contact with a live wire near the fuse box, with the result that a current of electricity of high voltage was transmitted through the "fish line" and electrocuted Chauvin and Walton, who were standing on the ground with the "fish line" in their hands.

The dependents of Chauvin brought a suit under the Compensation Law against the American Mutual Liability Insurance Company, the insurance carrier of the bag company, and obtained judgment, which was affirmed by this court. 17 La. App. 187, 134 So. 450. Walton's dependents, plaintiffs herein, also brought suit under the Compensation Law against the same insurance carrier and obtained judgment in the civil district court for $20 a week for 300 weeks,

the maximum allowed by the statute. Based upon the latter judgment and upon the authority of section 7 of Act No. 20 of 1914, as amended by Act No. 247 of 1920, the American Mutual Liability Insurance Company has intervened herein and asked for and obtained a judgment below ordering defendants to reimburse the insurance carrier for the amount of compensation paid the plaintiffs out of the judgment rendered in this case.

The charge of negligence against the defendant Boudreaux is that while he was at the top of the conduit and in a position to prevent the "fish line" from protruding therefrom, he failed to do so. The power company is sued as the employer of Boudreaux, who is said to have been acting within the scope of his employment at the time of the accident.

The defense is to the effect that Walton and Chauvin were guilty of negligence in pushing the "fish line" through the top of the conduit before Boudreaux had reached a position on the pole where he could receive it, and that this negligence was either the sole or contributing cause of the accident.

In the alternative it is contended that, if the accident be held to be due to the fault of Boudreaux, he was not an employee of the power company, but was acting as assistant, or volunteer for the bag company, and, "pro hac vice," its employee. Finally, a plea of prescription of one year is made against the claim of the insurance company, intervener.

■ Considering, first, the question of whether Boudreaux was out of character as an employee of the power company on the morning of the accident and a volunteer in the service of the bag company, the evidence is overwhelmingly to the effect that the power company had undertaken to make connection with the service lines of the power company and that no person other than an employee of the power company is ever permitted to make such connection.

On the second point of the defense there is some testimony in the record to the effect that Boudreaux, before ascending the pole, ordered Chauvin and Walton to refrain from pushing the "fish line" through the conduit until he had obtained a position on the pole where he might control the "fish line" after its emergence from the upper end of the conduit, and that, by failing to heed this admonition, the line was prematurely pushed through the conduit before Boudreaux had reached the cross-arm, which was admittedly the proper position to have been in for the control of the "fish line." This testimony, however, is overborne by the weight of evidence to the contrary, which shows that Boudreaux was seated on the cross-arm for some little time before the wire emerged from the upper opening of the conduit, a fact found by the trial judge in his written reasons for judgment.

■ But, it is said, conceding that Boudreaux was an employee of the power company, he had no business to do work which the bag company had agreed to do, i. e., bringing the wire up the conduit along the pole, and that to this extent he exceeded his authority and his employer cannot be held for negligence in the performance of acts beyond the scope of his employment. Referring to this contention, we first observe that the question of whose duty it was to bring the wire up the pole is at least doubtful. The officials of the bag company who testified denied that they had agreed to do anything more than make connections with the post. But suppose the bag company had agreed to install the wire in the conduit on the post and that Boudreaux did more than was necessary in the interest of his employer. Let us say that in doing so he acted in disobedience to his employer's instructions—and there is no contention that he received any instructions on the subject—would it make any difference in the responsibility of his employer under the doctrine of respondeat superior? Boudreaux was certainly on the mission of his employer, and if, in order to do the work with the execution of which he was intrusted, he undertook a little more than was necessary, he was, nevertheless, within the general scope of his employment.

In Williams v. Pullman Palace Car Co., 40 La. Ann. 91, 3 So. 631, 634, 8 Am. St. Rep. 512, our Supreme Court held that a master was liable for the negligence of his servants in the exercise of the functions in which they are employed, whether the negligent act be willful or "committed in disobedience of the express orders of the master." See, also, Bearman v. Southern Bell Tel. & Teleg. Co., 17 La. App. 89, 134 So. 787. In 18 R. C. L. § 252, p. 793, we find the following: "Where authority is conferred to act for another, without special limitation, it carries with it, by implication, authority to do all things necessary to its execution; and when it involves the exercise of the discretion of the employee the use of such discretion or force is a part of the thing authorized, and when exercised becomes, as to third persons, the discretion

and act of the employer and this, although the employee departed from the private instructions of the employer, provided he was engaged at the time in doing his employer's business, and was acting within the general scope of his employment. It is not the test of the employer's liability for the wrongful act of the employee, from which injury to a third person has resulted, that he expressly authorized the particular act and conduct which occasioned it. In most cases where the employer has been held liable for the negligent or tortious act of the employee, the employee acted not only without express authority to do the wrong, but in violation of his duty to the employer."

█Defendants contend that there is an inconsistency amounting to estoppel in the position now assumed by the plaintiff in this case when contrasted with the judicial allegations in the suit previously brought by the present plaintiffs as dependents under the compensation statute (Walton v. American Mutual Liability Ins. Co., No. 190294, civil district court, parish of Orleans, decided July 14, 1931), in that the recovery in the compensation case was necessarily based upon the allegation and proof of the fact of Walton's employment by the bag company, whereas in this case it is alleged and insisted that the accident arose out of an undertaking by the power company and not out of the employment of Walton.

Whatever merit there may be in this contention is unavailing, for the precise point was considered by the Supreme Court of this state in Rooney v. Overseas Railway Co., Inc., 173 La. 183, 136 So. 486, 488, in an opinion reversing this court, wherein it was held that an employee may be in the general employment of one employer, and, "at the same time, in the special employment of still another, for a particular occasion, without surrendering his general employment. 28 R. C. L. p. 764, § 58." Quoting further from the same opinion: "It is not unusual for an employee, who is sent by his master to do a particular thing for another, in the course of his master's business, after arriving there, to be called upon to do, in addition, some other thing in the same line, but it is not considered that the employee, in undertaking to do such other thing, is acting for himself, and not for the one who sent him."

We, therefore, find that Boudreaux, in undertaking the installation of the conduit as a preliminary to effecting a final connection with the feed line of the defendant power company, was acting within the scope of his employment.

█ Nor do we find any merit in the contention that Walton was guilty of contributory negligence in pushing the wire through the conduit. To begin with, Walton was not pushing the wire, but feeding the slack to Chauvin as Chauvin pushed it up the conduit, and since neither Chauvin nor Walton was an employee of the power company, the fellow-servant doctrine is not applicable. 39 C. J., verbo "Master and Servant," § 660, pp. 552, 553.

█ The plea of prescription directed against the intervention of the American Mutual Liability Insurance Company is based upon the fact that the insurance company did not file suit until more than one year after the accident, when it intervened in this suit under the authority of section 7 of the Compensation Law, Act No. 20 of 1914 (amended by Act No. 247 of 1920), which reads as follows: "Section 7. * * * That when an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person, and may compromise the claim therefor in his discretion; provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act then any such excess shall be paid to the injured employee less the employer's legitimate and reasonable expenses and costs of the action, which payment shall be credited upon the balance of compensation, if any, that may become due thereafter."

As was said in Foster & Glassell Co. v. Knight Bros., 152 La. 596, 93 So. 913, 915: "This right of action merely supplements that recognized by the jurisprudence, as announced in Appalachian Corporation v. Brooklyn Cooperage Company [151 La. 41, 91 So. 539], in that it gives the employer the right, upon becoming legally responsible to the employee for compensation, to sue before as well as after payment, or as soon as the liability becomes fixed, the tort-feasor with subrogation of all the remedies of the injured person, not alone for what might have to be paid, but also for the benefit of

the employee up to the full extent of the injury. But it added nothing to the extent of the employer's recovery because the excess goes to the employee. To this extent, when asserting the rights of the employee, under the subrogation, that remedy, as well as the cause of action, whether brought in the name of the employer or employee, is prescribed within one year from the date of the injury."

In Chauvin v. Louisiana Power & Light Co., 177 La. 193, 148 So. 23, 28, it was held that: "Such action as may be brought by the employer against the third person is one in tort and is prescribed in one year under the general law. Foster & Glassell Co. v. Knight Bros., 152 La. 596, 93 So. 913."

The holding in the cited cases is difficult to reconcile with the dictum in Foster & Glassell Company v. Knight Brothers, where it was held that the action of the employer or his insurance carrier for indemnification for amount of workmen's compensation paid is an action upon an implied or quasi contract to be reimbursed for money which it was compelled to pay on account of the fault of the defendant for which the employer was in no wise responsible, and, in the Appalachian Case, referred to in the Foster & Glassell Case, we find: "It is true that the suit of the injured party grew out of a tort; and, while the present suit is a sequence of the former suit, it does not necessarily follow that the two causes of action are the same, and are to be governed by the same law of prescription. The obligation of the defendant to Lincoln (the injured workman) was that of a tort-feasor, whereas its obligation to the plaintiff (employer) is for reimbursement of money paid for and on its behalf, which under the law the defendant was liable for and should have paid."

In this case, however, the present action was brought by the widow and heirs of Walton within the prescriptive period of one year from Walton's death, and we believe that this fact is sufficient to defeat the plea of prescription.

In Flower et al. v. O'Connor, 17 La. page 213, the court held (syllabus):

"Where it is established that the defendant has been judicially notified of the titles or claim which is the foundation of the demand for the whole of the property or debt, so as to acquire a sufficient knowledge of the rights, sought to be enforced against him there results a legal interruption of prescription in favor of those to whom such rights belong.

"So where suit is brought on a promissory note by D. F. as the surviving partner of the commercial firm of D. B. F. & Co., who was nonsuited, yet it being for the whole amount of the claim or note, caused such an interruption in favor of the plaintiffs or firm, so as to destroy the defendant's plea of prescription."

Hennen's Digest, vol. 2, verbo "Prescription," IV (c) 3, commenting on Flower v. O'Connor, says: "An action by a surviving partner after dissolution of the partnership when he had no right to sue for or receive partnership debts, not being authorized by the Probate Court, and could not act as negotiorum gestor of the firm, will, if for the whole debt, operate an interruption for the other partners."

See, also, Satterley v. Morgan, 33 La. Ann. 846; Becnel v. Waguespack, 40 La. Ann. 109, 3 So. 536.

But if we are mistaken in the application of the authorities cited (which we do not believe), we are comforted by the reflection that it cannot make the slightest difference to defendants. The amount for which they may be held liable cannot be augmented nor diminished by reason of the recognition of intervenor's claim, because, to quote from the law: " * * * and the payment or award of compensation hereunder shall not affect the claim or right of action of such injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for such injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for such injury." Act No. 20 of 1914, § 7, as amended by Act No. 38 of 1918, as amended by Act No. 247 of 1920.

Moreover, the intervener, if its action as against defendants is prescribed, may recover through plaintiffs. Mahon v. Spence, 11 La. App. 604, 123 So. 349.

The deceased was 36 years of age, with a life expectancy of 31.07 years. He earned regularly about $30 a week and sometimes more for overtime. He left a widow and two children, a girl aged eight and a boy aged six years.

In Dotson v. La. Cent. Lumber Co., 144 La. 78, 80 So. 205, decedent was 23 years of age and earned $65 per month. His widow was allowed $5,000 and each of his two children a like sum.

In Blackburn v. La. Ry. & Nav. Co., 144 La. 520, 80 So. 708, a widow and two minor chil-

dren of the deceased, who, at the time of his death, was 32 years of age and earning $100 per month, were awarded a total of $15,000, or $5,000 each.

In Moren v. N. O. Ry. & Light Co., 125 La. 944, 52 So. 106, 136 Am. St. Rep. 344, decedent was 36 years of age, was earning $75 per month, and left a widow and one child. An award of $10,000 was made.

In Feely v. National Packing Co., 141 La. 903, 75 So. 837, deceased was 54 years old and earning $150 per month. A widow and one minor child were allowed $15,000.

The award of the trial court of $5,000 each to the children and the widow, or a total of $15,000, is consistent with the jurisprudence of this state.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.