Argued 9 August, decided 17 October, 1904.

## STATE *v.* LEASIA.

[78 Pac. 328.]

DATE OF TERMINATION OF MARRIAGE IN DEFAULT CASE.

1. In view of the provision of Section 548 of B. & C. Comp., that no appeal can be taken from a default decree, a final order of divorce entered for want of an answer operates to at once terminate the marriage relation, so that thereafter the woman is a competent witness against the man in a criminal case.

PAROL EVIDENCE OF LOST WRITING.

2. Testimony of one witness that she heard defendant read a letter that he had written to a third person, which letter he had hidden, and that she had not been able to find it, is sufficient evidence of the letter to justify oral proof of its contents.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Martin V. Leasia appeals from a conviction of murder in the second degree.					AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Dan R. Murphy.*

For the State there was a brief over the names of *Andrew M. Crawford,* Attorney General, and *John Manning,* District Attorney, with an oral argument by *Mr. Manning.*

MR. JUSTICE WOLVERTON delivered the opinion.

The defendant is charged by the information of the district attorney with the crime of murder in the first degree, and was convicted of murder in the second. At the trial, Mrs. Pauline Leasia being called as a witness for the State, defendant objected that she was incapacitated to testify against him without his consent, because the marital relations formerly existing between them had not been finally severed at the time the events occurred about which it was desired that she should bear witness, and, the objection being overruled, error is assigned.

1. The crime with which the defendant is accused was committed on May 24, 1903. Preceding that, on the 18th day of the same month, Mrs. Leasia procured a decree of

divorce against him in the Circuit Court of the State of
Oregon for Multnomah County, he having failed to appear,
or answer, or otherwise plead in the cause, although due
service of summons had been had upon him.   However,
on the 15th day of June following, he gave notice of ap-
peal from the decree to the supreme court, and filed the
undertaking required by law in such cases.   Mrs. Leasia
testified relative to the circumstances of the homicide oc-
curring on the date as charged and events that subse-
quently transpired, and the contention of counsel for
defendant is, in purport, that the decree of divorce did
not operate to sever the marital relations of the parties
until finally determined upon the appeal, and that, under
the existing conditions, the parties were to all intents and
purposes husband and wife.   Whatever might be the effect
of an appeal regularly and duly taken in suspending or
intermitting the operation of the decree of the trial court
while the appeal is pending (a matter not necessary for us
to decide at this time), it is perfectly manifest that an at-
tempted appeal where none lies could have no possible
effect upon the finality of the decree sought to be revised.
No appeal lies from a judgment or decree given by con-
fession or for want of an answer: B. & C. Comp. § 548;
*Fassman* v. *Baumgartner*, 3 Or. 469; *Smith* v. *Ellendale Mill
Co.* 4 Or. 70; *Trullenger* v. *Todd*, 5 Or. 36; *Rader* v. *Barr*,
22 Or. 495 (29 Pac. 889); *Askren* v. *Squire*, 29 Or. 228 (45
Pac. 779).   Having failed to appear in the divorce pro-
ceeding, Leasia was wholly without the right of appeal,
and any attempt that he might have made in that direc-
tion was ineffectual to carry the case to the higher tribu-
nal, and, *a fortiori*, was unavailing to disturb the final
effect of the decree itself, which terminated the marriage
as to both of the parties: B. & C. Comp. § 515.   There
being no appeal, the decree became operative and finally
effective when rendered, so that the objection is not well

assigned, Mrs. Leasia not being the wife of Leasia at the time of the occurrence of the events about which inquiry was made.

2. This leaves but one other question. Mrs. Leasia testified that immediately after the homicide the defendant compelled her to accompany him into the woods; that while there defendant took from his person a letter in his own handwriting, written prior to the homicide, and addressed to his people, which he read to her, she at the same time looking upon the writing and following him as he read; that after reading the letter he hid it under a log or stump near by, and they shortly left the place, traveling in a circuitous and obscure way until they came to a barn, where the defendant was apprehended by an officer. She further testified that she had since made diligent search for the place where the letter was hidden, and for the letter itself, but had been unable to find either. Thereupon she was permitted to give evidence of the contents of the letter, and error is assigned in that relation. The objection is directed not so much to the quantum of evidence given to show the loss of the letter preliminary to allowing parol evidence of its contents as to the sufficiency of the testimony to establish the fact of the existence of such a writing at any time, it being insisted that the proof must be clear and convincing in that regard, or else it cannot be considered. The action here is not upon the instrument or writing itself as the basis of the right of recovery, as was the case in *Gillis* v. *Wilmington, etc., R. Co.*, 108 N. C. 441 (13 S. E. 11, 1019), cited by counsel, but the latter is sought to be established as an incident in the proofs of the State to show the guilt of the accused through his admissions. If the letter in fact existed, it contained admissions of the defendant as to his preconceived intention to take the life of the deceased. If he had made the statements which it is said to contain to the witness orally,

without reading from or exhibiting the letter, there could be no question that her evidence of the statements would be pertinent and competent and admissible for what they were worth, and it would not depend upon any such contingency or qualification as that it must be clear and convincing. But, as he read the statements to her from a letter or writing, her testimony as to what was contained therein becomes secondary evidence, which she is allowed to give after showing its loss. Now, it does not seem reasonable or necessary that to be admissible her evidence as to the existence of such a document should be required to be any clearer or of more convincing character than her evidence as to its contents. Of course, there must have been a writing in existence before there could be any contents, but her testimony that she saw the writing, and followed him in reading it, was some proof of its existence, competent to go to the jury as to the fact, in like manner as her testimony as to its contents. The statute prescribes that the direct evidence of one witness who is entitled to full credit is sufficient proof of any fact, except usage, perjury, and treason (B. & C. Comp. § 693), and, the credibility of the witness being for the jury, the whole question whether the fact is established becomes a matter for the jury. Nor does it change the issue that the witness is contradicted by other witnesses, the duty of the jury being then to determine who is worthy of the greater credit. The entire question relative to the existence of the instrument is therefore one for the jury to determine according to the weight or preponderance of the testimony as other facts are determined, with this qualification : that in the end in criminal cases the jury must be convinced beyond a reasonable doubt of the guilt of the accused before they can convict.

Finding no error in the record, the judgment of the circuit court will be affirmed.    AFFIRMED.