[Crim. No. 214.   Third Appellate District.—September 17, 1913.]

## THE PEOPLE, Respondent, v. J. R. WOODLEY, Appellant.

DIVORCE—STATUTES FORBIDDING REMARRIAGE WITHIN PRESCRIBED TIME. Statutes providing that neither party to a divorce shall be capable of contracting marriage with a third person within six months after the entry of the decree of divorce, or within the time in which an appeal may be taken in the case, have no extraterritorial effect.

ID.—OREGON AND WASHINGTON STATUTES—DIVORCE IN LATTER AND REMARRIAGE IN FORMER STATE.—Where the statute of Washington provides that neither party to a divorce shall be capable of contracting marriage within six months after the entry of the decree, and the statute of Oregon provides that neither party to a divorce shall be capable of contracting marriage with a third person within the period for taking an appeal in the case, the marriage in Oregon of a nonresident thereof, who was divorced in Washington less than six months before, is valid. The Oregon statute does not apply to divorces granted in other states, nor does the Washington statute apply to marriages contracted in other states.

ID.—MARRIAGE—VALIDITY IN OTHER STATES.—And such marriage, being valid in Oregon where contracted, will be regarded, under section 63 of the Civil Code, as valid in California.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order refusing a new trial.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

W. D. L. Held, T. J. Weldon, and Walter F. Stringley, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was convicted under the charge of having placed and permitted his wife, known as Pearl

White, to remain in a house of prostitution and he was sentenced to a term of five years in the penitentiary. It is not disputed that an essential element of the crime and necessary to be shown by the people beyond a reasonable doubt is that said female was in contemplation of law the wife of defendant, that they were, in other words, the parties to a valid marriage contract. (*People* v. *Mock Yick Gar,* 14 Cal. App. 334, [111 Pac. 1039].) As to this the people made out a sufficient case but defendant contended that the woman was not his wife as that term is used in the law, that the apparent marriage was in fact entirely void and therefore that the prosecution, brought as it was under section 266 of the Penal Code, must fail. It appeared that the marriage ceremony between defendant and the said Pearl White was performed, in the state of Oregon, on April 28, 1905. The parties were then residents of the state of Washington. Prior to said purported marriage appellant had been married to one Josephine Woodley, who is still living, and he was granted a decree of divorce from her by the superior court of Spokane, in said state of Washington, on December 17, 1904.

By reason of the fact that the said marriage to Pearl White, which we shall designate hereafter as marriage No. 2, occurred within six months of the entry of said decree of divorce, it is the contention of appellant that, under the law of the state of Washington and also of Oregon, said marriage No. 2 was and is invalid.

In his effort to establish his theory he sought to introduce the statute of Washington providing that neither party to a divorce proceeding shall be capable of contracting marriage within six months from the date of the entry of a decree therein and that all marriages contracted in violation of that law, whether contracted within or without the state, are void. The court sustained an objection to the offered proof.

Attention was also called by appellant to the decision of the supreme court of Washington (*In re Smith's Estate,* 4 Wash. 702, [17 L. R. A. 573, 30 Pac. 1059]), wherein said law was construed as suspending the operation of the decree of divorce for the period of six months. Therein, referring to said statute, it was said: "The first part of the section directs that in granting a divorce the court shall order a complete and full dissolution of the marriage as to both parties. The provision,

however, if given force, must place some limitation upon this, in that a decree of divorce could not be full and complete if the parties are not allowed to contract marriage with other persons until the time for an appeal shall have expired, or in case of appeal, until the same shall have been determined. If the provision is to have any force, it seems to us it must limit the preceding part of the section, and the divorce cannot be held to be full and complete until the time mentioned in the provision has expired. It is full and complete for all purposes, excepting neither party shall enter into a marriage with any other person during the time specified, and it may be a limitation upon it in that respect. During this time, for this purpose the decree of divorce is suspended and inoperative to that extent. . . . Consequently these parties were incapable of contracting the marriage relation within said time, and, no marriage between them having been solemnized thereafter, it follows that they were never husband and wife as to each other.''

An acceptation of that decision as a sound exposition of the Washington statute would necessarily lead to the conclusion that the declared marriage of defendant and the said Pearl White was in fact no marriage at all. This would follow for the reason that he had a wife living from whom he was not divorced. His *status* in the state of Washington being that of a married man it would continue the same wherever he went, and another attempted marriage in any state would be invalid unless that state permitted bigamy, which supposition, of course, is to be rejected.

But the Smith decision is not followed by subsequent cases in Washington and it is not in harmony with the declared views of the supreme court of this state, as we shall ultimately see.

In *Willey* v. *Willey*, 22 Wash. 115, [79 Am. St. Rep. 923, 60 Pac. 145], the supreme court of Washington held that said statute had no extraterritorial operation, saying: "We do not think the prohibitions of the code of 1881 were in effect beyond the jurisdiction of the state or territory" and it was determined that a marriage valid in California where it was celebrated was also valid in the state of Washington.

In *State* v. *Fenn*, 47 Wash. 561, [17 L. R. A. (N. S.) 800, 92 Pac. 417], it was held that the Washington statute,

"though invalidating a remarriage in Washington, within the prohibitory period, of persons divorced in that state, and marriages in other states and countries of persons divorced and domiciled in Washington made to evade her laws, the parties intending to return to Washington, did not invalidate a foreign marriage within the prohibited period of a woman divorced in Washington if she was divorced in good faith and if she was domiciled in good faith in the country where the marriage occurred at the time it was performed."

And, in *Pierce* v. *Pierce*, 58 Wash. 622, [109 Pac. 45], following the Fenn case, it was held that the Washington statute did not affect the validity of a marriage contracted in Victoria by parties who were domiciled there, the court saying: "If the marriage is entered into by one who has in good faith removed to another jurisdiction, not for the mere purpose of the marriage or to evade the rigor of the local law but to establish a domicile, the marriage should be held to be valid; whereas if it appears that the parties being domiciled in this state have gone to another jurisdiction with the primary intent to evade our law and marry in defiance of it, the marriage should be held to be void."

Appellant, realizing, no doubt, that the declaration in the Smith estate as to the scope and effect of said Washington statute was probably too sweeping and that it did not invalidate a marriage in another jurisdiction, sought to prove the Oregon statute by offering the decision of the supreme court of that state in the case of *McLennan* v. *McLennan*, 31 Or. 480, [65 Am. St. Rep. 835, 38 L. R. A. 863, 50 Pac. 802]. Waiving the question as to the proper method of proving the statute, we may find there a statement of the law in that state and also an interpretation of it in harmony with the decision in the Smith estate. In the McLennan case the court said: "The sole question presented on the appeal is as to the validity of the Vancouver marriage and its determination depends upon the construction of section 503 of our statute (Hills Ann. Laws), and its effect upon marriages solemnized in a neighboring state. By the section it is provided that 'a decree declaring a mortgage void or dissolved at the suit or claim of either party shall have the effect to terminate such marriage as to both parties, except that neither party shall be capable of contracting marriage with a third person, and

if he or she does so contract shall be liable therefor as if such decree had not been given, until the suit has been heard and determined on appeal, and if no appeal be taken, the expiration of the period allowed by the code to take such appeal.' It is clear that a marriage in this state in violation of this section would be null and void because by its provisions the parties are incapable of entering into such a relation within the time specified, for the reason that the decree does not to that extent terminate the former marriage," and the court holds that a marriage in violation of said statute, although contracted in the state of Washington by persons domiciled in the state of Oregon, is absolutely void when called in question in the courts of the latter state.

The doctrine of this case, however, is impliedly, if not expressly, rejected in the subsequent decisions of the Oregon court.

In *State* v. *Leasia*, 45 Or. 410, [78 Pac. 328], the question involved was whether a divorced wife was a competent witness against her former husband as to a matter arising after the decree was entered. The crime was committed on May 24, 1903, and the decree of divorce was entered on the 18th of the same month, and the contention was made that the decree did not operate to sever the marital relations of the parties until finally determined upon the appeal. But it was held, that under the decisions of that court, the defendant having failed to appear in the divorce proceeding, he was wholly without the right of appeal and, there being no appeal, the divorce decree became operative and finally effective when rendered. The wife was therefore declared to be a competent witness against her husband.

In *Wallace* v. *McDaniel*, 59 Or. 378, [117 Pac. 314], also decided by the supreme court of Oregon, it was held that since the wife alone in that case was entitled to appeal she could waive her right and validly marry a third person on the last day on which she could take the appeal.

It is quite apparent that the construction thus accorded to the Oregon statute is entirely inconsistent with that found in the McLennan case.

It may be well to notice how the question has been regarded in the other cases cited by counsel.

In the *Inhabitants of Phillips* v. *Madrid*, 83 Me. 205, [23 Am. St. Rep. 770, 12 L. R. A. 862, 22 Atl. 114], it appeared that Ella R. Hinckley was legally married to one Wardwell, of Clinton, in the state of Maine, May 25, 1879; that she and her husband afterward moved to Massachusetts, where they separated and she returned to the state of Maine. While she was there her husband brought a suit of divorce and obtained a decree in Massachusetts, in November, 1882, which was made absolute in November, 1883. She remained in the state of Maine and, on the sixth day of September, 1884, was duly married to one Lorestein Hinckley, in the town of Phillips. It was claimed by the defendants that by the statute of Massachusetts and also of Maine a husband or wife for whose fault a divorce was granted could not marry again within two years from the decree of divorce, and as that time had not elapsed in September, 1884, the marriage of said Lorestein and Ella R. Hinckley was illegal. The supreme court of Maine, however, decided against this position, saying: "We think the contention is not sound. When the divorce was granted, Ella R. was no longer the wife of Wardwell. (*Burlen* v. *Shannon*, 115 Mass. 438; *Commonwealth* v. *Putnam*, 1 Pick. (Mass.) 136.) The prohibition to remarry within the time named was in the nature of a penalty. It had no force as a disability to remarry out of the state of Massachusetts. It did not attach to the person of the wife in this state. This rule is held in many courts. (Citing cases.)

"Nor does the prohibition upon the guilty party to remarry by the statute of this state attach to said Ella R. Our statute applies only to divorces granted by the courts of this state. It has no reference to a decree granted in another state. (*Bullock* v. *Bullock*, 122 Mass. 3.)" It was accordingly held that said marriage of September 6, 1884, was legal.

The Louisiana supreme court decided, in the *Succession of Hernandez*, 46 La. Ann. 962, [24 L. R. A. 831, 15 South. 461], that "The prohibition of the statute of New York to the effect that no second or other subsequent marriage shall be contracted by any person, during the lifetime of the former husband or wife of such person, in case the former marriage be annulled or dissolved on the ground of adultery, has no extraterritorial effect, being a penal statute; and it cannot be given the effect of annulling a contract of marriage between

persons at the time residing abroad, notwithstanding it was solemnized in the city and state of New York,—the contracting parties announcing their intention to be to thereafter reside in Louisiana, and afterward actually residing there.''

But, as far as this case is concerned, we must keep in mind that the validity of said marriage No. 2 is to be determined by the rule laid down by the supreme court of this state.

In *Estate of Woods,* 137 Cal. 129, [69 Pac. 900], the court was called upon to construe section 61 of the Civil Code which at that time provided as follows: ''A subsequent marriage contracted by any person during the lifetime of a a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning unless: 1. The former marriage has been annulled or dissolved. Provided, that in case it be dissolved, the decree of divorce must have been rendered and made at least one year prior to such subsequent marriage.'' The court said: ''That the legislature had power to provide for the rendition of a decree of divorce by a court which should not be absolute for the period of one year after its rendition we have no doubt; but that the legislature has failed to so provide by section 61, or even attempted so to do we also have no doubt. The obvious meaning of the section is, that neither of the divorced parties shall marry within the period of one year after the decree of divorce is rendered. The statute is a prohibition pure and simple upon the marriage of either party for one year; and declares the penalty for a violation of this prohibitory provision to be nullity of the marriage. . . . Section 61, subdivision 1, does not purport to operate upon or affect a decree of divorce. It deals with divorced persons. It affects them after the decree of divorce has been rendered. It deals with them after they have become unmarried.''

The same reasoning may be applied to the Washington statute. Indeed, the decree offered in evidence by appellant shows that the parties were divorced. No condition was attached to it. The decree was absolute and thereby appellant became an unmarried person but subject to the penalty of having his second marriage invalidated if he attempted to remarry a third person in the state of Washington within six months.

Again, in the *Estate of Woods,* 137 Cal. 129, [69 Pac. 900], the supreme court decided that said section 61 of the Civil Code had no extraterritorial operation and it quoted with approval the following from *State* v. *Shattuck,* 69 Vt. 403, [60 Am. St. Rep. 936, 40 L. R. A. 428, 38 Atl. 81] : "Hence, if a statute, silent as to marriages abroad, as ours is, prohibits classes of persons from marrying generally, or from intermarrying, or declares void all marriages not celebrated according to prescribed forms, it has no effect upon marriages, even of domiciled inhabitants, entered into out of the state. Those marriages are to be judged of by the courts of each state just as though the state did not exist."

Under the rule thus announced, we must eliminate altogether from consideration the said statute of Washington.

It is equally sound that we must look to the law of Oregon to determine whether the said marriage No. 2 is valid. Our code itself (Civ. Code, sec. 63) so provides, as follows: "All marriages contracted without this state, which would be valid by the laws of the country in which the same were contracted, are valid in this state."

Was the marriage, then, valid according to the laws of the state of Oregon where it was celebrated? The answer would undoubtedly be in the negative if the parties had been divorced in that state. But when the statutes of Oregon refer to a decree of divorce they contemplate a decree rendered by the courts of that state and not of a foreign jurisdiction.

As said, in *State* v. *Shattuck,* 69 Vt. 403, [60 Am. St. Rep. 936, 40 L. R. A. 428, 38 Atl. 81] : The language of the statute is general and "it is a fundamental rule that no statute, whether relating to marriage or otherwise, if in the ordinary general form of words, will be given effect outside of the state or country enacting it." There is exactly the same reason for holding that the Oregon statute does not refer to divorces granted in other states as there is for holding that the penalty therein provided does not refer to marriages celebrated in other states.

The statute, in the absence of language extending its application extraterritorially, must be confined to domestic decrees of divorce and domestic marriages. It may be true that this construction makes an invidious distinction against those who are divorced and remarry in the same state and in favor of

those whose divorce and remarriage occur in separate states, but this is a matter entirely for legislative control. No doubt the Oregon statute might have covered the case of one divorced in another state but, as we conceive it, the legislature did not so provide.

Of course, if there had been in the state of Washington a statute like that of this state, found in section 61 of the Civil Code as amended in 1903 (Stats 1903, p. 176) marriage No. 2 would have been utterly void since appellant would not have been an unmarried person, but it cannot be said in any sense that the Washington judgment was an interlocutory decree of divorce.

Under sound principles of construction, we think it cannot be held that the said Pearl White was not the wife of appellant, and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 14, 1913.