[Crim. No. 1407. First Appellate District, Division Two.—July 8, 1927.]

THE PEOPLE, Respondent, v. PRUETTE KEARNS GODDARD, Appellant.

Soren X. Christensen and J. C. Wood for Appellant.

U. S. Webb, Attorney-General, Emery F. Mitchell, Deputy Attorney-General, Earl Warren, District Attorney, and Leonard J. Meltzer, Deputy District Attorney, for Respondent.

STURTEVANT, J.—On the tenth day of December, 1926, the district attorney of Alameda County filed an information against the defendant charging him with the crime of bigamy. On December 14th the defendant entered a plea of not guilty. By consent the cause was set for trial on January 10, 1927. On that date the trial was continued until a subsequent date. However, on January 12, 1927, by consent, the last-named order was set aside and the trial was taken up immediately by consent. Acting upon the

request of the defendant he was allowed to withdraw his plea of not guilty and to enter a plea of guilty. At the request of the defendant the cause was ordered referred to the probation officer and the further proceedings were continued until January 25, 1927. From time to time the hearing was further continued. On March 19, 1927, the hearing was again taken up and at that time the defendant asked permission to withdraw his plea of guilty and to enter a plea of not guilty. Argument was had and the further proceedings were continued until March 22, 1927. On that date the trial court denied the defendant's motion to change his plea, and also denied him probation, and thereupon the court proceeded to sentence the defendant. Immediately thereafter counsel for the defendant made a motion that the sentence and judgment be set aside and renewed his motion that the defendant be permitted to withdraw his plea of guilty and to enter a plea of not guilty. In support of his motion the defendant offered in evidence an affidavit theretofore made by him and at the same time he took the stand and was examined and cross-examined.

From the evidence introduced it transpired that the alleged offense of the defendant rested on the fact that he married Audrey Ethel Hargraft at Oakland, California, on the third day of August, 1926. Prior to that date he married Marjorie K. Roys at Sacramento, California, who was still living and that marriage had never been dissolved or annulled. It also appeared that Marjorie K. Roys had formerly married Reuben F. Roys and that they had been divorced by a decree of the circuit court of the state of Oregon in and for the county of Multnomah on the twenty-eighth day of August, 1923. It was not contended in the trial court, and it is not contended in this court, that Mrs. Roys and the defendant left Oregon and went to Sacramento to be married and did so for the purpose of evading the laws of the state of Oregon. The trial court denied the motion to set aside the sentence and judgment, and from the judgment entered against the defendant he has appealed.

Both in the trial court and in this court the defendant contended (1) that he had been induced to enter a plea of guilty because he would surely secure probation, and (2) under the laws of Oregon Marjorie K. Roys was not legally divorced before she married the defendant, was not entitled

to contract marriage, and that the intermarriage of the defendant and Marjorie K. Roys was void.

An examination of the record discloses that the defendant did not contend that the trial court or any officer thereof stated or intimated to the defendant that he would surely secure probation if he would enter the plea of guilty. It does appear that the defendant's counsel advised the defendant that if he desired to obtain probation it would be better to enter the plea of guilty. Such facts were not sufficient to sustain the claim that the trial court erred in refusing the defendant permission to change his plea. (*People* v. *Manriquez*, 188 Cal. 602, 605 [20 A. L. R. 1441, 206 Pac. 63].)

The second point made by the appellant involves no question of fact, but solely a question of law as to whether Marjorie K. Roys was, under the laws of Oregon, at liberty to contract a valid marriage at Sacramento, California, on November 30, 1923. In open court counsel for both parties stipulated that the laws of Oregon on the subject were embodied in the statutes and decisions from which we have quoted or which we have cited below. The original statutory provision will be found in 1 Hill's Annotated Laws, section 503. Later that statute was amended to read as follows: "A decree declaring a marriage void or dissolved at the suit or claim of either party shall have the effect to terminate such marriage as to both parties except that neither party shall be capable of contracting marriage with a third person, and if he or she does so contract, shall be liable therefor as if said decree had not been given, until the suit has been heard and determined on appeal; but in no case until the expiration of six months from the date of said decree." In the case of *Twigger* v. *Twigger*, 110 Or. 520 [223 Pac. 934], the supreme court of Oregon reviewed its statutes and decisions, and then, at page 936, it said: " . . . this court has decided that where parties resident of this state, one or both of whom have been divorced by our courts within six months, go into the state of Washington, are there married, and return to this state to reside, the marriage is void. This results from a construction of the divorce statutes as they then stood. That is to say, the legislation in its then condition assumed to invalidate for all purposes in this state a marriage contracted in a sister state under the circum-

stances mentioned. None of those decisions, however, go so far as to say that the marriage would be otherwise than valid for all purposes in Washington."

■ "Where a question as to the construction or effect of the constitution or statutes of a state arises in the courts of another state, or of the United States, such courts should follow the decisions of the court of last resort of the state whose constitutional or statutory provisions are involved, even though they would be inclined to place a different, or even an opposite, construction upon a similar provision if it appears in the constitution or statutes of their own state." (15 C. J. 927, sec. 316.)

In *McGrew* v. *Mutual Life Ins. Co.*, 132 Cal. 85 [84 Am. St. Rep. 20, 64 Pac. 103], a question arose regarding the laws of Hawaii on the subject of divorce. The respondent made certain contentions as to what should be the holding on that subject. Mr. Justice McFarland, speaking for the court, on page 89, stated as follows: " . . . but, admitting these legal propositions to be correct, the courts of Hawaii have held otherwise, and their construction of the statutes of their own country cannot be here assailed. (*McGrew* v. *McGrew*, 9 Hawaii, 475.) Full effect must therefore be given to the judgment in the divorce suit."

■ These authorities lead us to the conclusion that the highest court of Oregon has decided that that court has never held that the Oregon laws of divorce have any extra-territorial application to marriage contracted in some other state. We are entitled, therefore, to assume that the law of Oregon is the same as the law of the state of California.

■ However, the law of the state of California on the subject has been very clearly defined. In the case entitled *Estate of Wood*, 137 Cal. 129 [69 Pac. 900], the validity of the marriage of Abbie Rose Wood and Joseph M. Wood at Reno, Nevada, on January 1, 1898, was involved. At the time of the marriage Wood was a single man, but Mrs. Wood had been divorced by decree rendered August 19, 1897. At that time section 61 of the Civil Code provided: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless: 1. The former marriage has been annulled or dissolved; provided, that in

case it be dissolved, the decree of divorce must have been rendered and made at least one year prior to such subsequent marriage." The court made an exhaustive examination of the decisions, and on page 135 [69 Pac. 902], Mr. Justice Garoutte, speaking for the court, quoted and followed *State* v. *Shattuck,* 69 Vt. 403 [60 Am. St. Rep. 936, 40 L. R. A. 428, 38 Atl. 81], as follows: "The language of our statute is general, and it is a fundamental rule that no statute, whether relating to marriage or otherwise, if in the ordinary general form of words, will be given effect outside of the state or country enacting it. . . . Hence, if a statute, silent as to marriages abroad, as ours is, prohibits classes of persons from marrying generally, or from intermarrying, or declares void all marriages not celebrated according to prescribed forms, it has no effect upon marriages, even of domiciled inhabitants, entered into out of the state. Those marriages are to be judged of by the courts of such state just as though the statute did not exist." We think that the rule just quoted is clearly applicable to the facts of this case and determines the question as against the appellant. Under these circumstances the trial court committed no error in denying defendant permission to withdraw his plea of guilty and to enter a plea of not guilty.

The judgment is affirmed.

Nourse, J., and Koford, P. J., concurred.