Argued October 29, affirmed in part, reversed in part
November 28, 1951

IN RE THE ESTATE OF ALBERT OTT, DECEASED
# OTT *v.* CHRISMAN
238 P. 2d 269

*George T. Cochran,* of La Grande, and *George E. Richards,* of Enterprise, argued the cause for appellant. On the briefs were George E. Richards and Cochran & Eberhard.

*Robert V. Chrisman,* of Enterprise, argued the cause and filed a brief in pro per. for respondent.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

WARNER, J.

This is a proceeding in the estate of Albert Ott, deceased, wherein Stella Ott, as the alleged widow of the decedent, petitioned for the removal of Robert V.

Chrisman as administrator and for her own appointment in his stead. She also represented herself to have a partnership interest in certain personal property of the estate under a prenuptial agreement made between herself and the deceased shortly before their alleged Idaho marriage. From an order adverse to the petitioner, she appeals.

The paramount question in this matter is whether or not the decedent and the petitioner were legally married in Lewiston, Idaho, on the 28th day of February, 1949.

It appears that the petitioner had married one Ralph Bloom in 1917. Thereafter, as Stella Bloom, she initiated a suit against her husband, Ralph Bloom, in the circuit court for Wallowa county, Oregon, wherein she obtained a decree of divorce on February 21, 1949. No one challenges the regularity of that proceeding or the fact that as of that date, the then Mrs. Bloom and Albert Ott were residents of the state of Oregon, nor did any one appeal therefrom within the 60-day period authorized for appeals.

A few days after the divorce, Stella went to Lewiston, Idaho, where she temporarily abided with relatives. Shortly after her arrival there, she was joined by Albert Ott and the two were married in Lewiston under an Idaho license. This was seven days after Stella had obtained her divorce in Oregon. On the afternoon of their marriage, they left Lewiston for Spokane, Washington, where they remained for approximately 47 days, during which time Mr. Ott had extensive repairs made upon his logging truck which he used as the source of his income. Upon leaving Spokane with the truck, they came directly to Oregon, where Mr. Ott began an inquiry for log-hauling jobs at various places until his more or less regular work of like char-

acter could be resumed in Wallowa county, Oregon. In July, 1949, the Otts returned to Enterprise in that county, where they continuously resided until Mr. Ott's death on September 29, 1950.

Shortly after his death, certain of Mr. Ott's children by a previous marriage petitioned the county court for Wallowa county for the appointment of Robert V. Chrisman as administrator of their father's estate. He was so appointed on October 4, 1950, and ever since has been the qualified and acting administrator thereof. The petition of Mr. Ott's children disclosed his heirs consisted solely of three daughters, then residents of the state of Washington and, by reason thereof, disqualified from assuming the duties of such office. Their petition ignores the relationship between Stella and their father and inferentially disclaims that a legal marriage had been had between them by reason of the Idaho ceremony in Lewiston on February 28, 1949.

On October 9, 1950, Stella filed her petition in the probate proceeding, wherein she claimed to be the widow of Albert Ott and prayed for an order discharging Mr. Chrisman as administrator and appointing her as administratrix in his stead, and further alleged a partnership ownership in certain personalty of the estate.

Under the authority of § 13-502, O.C.L.A., the entire proceeding was transferred to the circuit court for Wallowa county on November 22, 1950, where a trial was had on the issues raised by the petition of Stella Ott, the administrator's answer and petitioner's reply thereto. This was followed on January 19, 1951, by a decree in that court adverse to the claims of Stella Ott and particularly with reference to her representation that she and the decedent were husband and wife at the time of decedent's death.

It is the position of the respondent-administrator that, by reason of the provisions of § 9-916, O.C.L.A., Stella Ott could not contract a legal marriage anywhere prior to the expiration of six months following the entry of the divorce decree in her favor on February 21, 1949; and, therefore, the purported Idaho union is null and void. Petitioner earnestly contends for the validity of the marriage and insists that the lower court was without jurisdiction to adjudicate title to the property in question.

Section 9-916, O.C.L.A., insofar as pertinent to the instant matter, reads:

> "A decree declaring a marriage void or dissolved at the suit or claim of either party shall have the effect to terminate such marriage as to both parties, except that neither party shall be capable of contracting marriage with a third person, and if he or she does so contract, shall be liable therefor as if said decree had not been given, until the suit has been heard and determined on appeal; but in no case until the expiration of six months from the date of said decree  *  *  *."

Section 9-916, in substantially its original form, has been an integral part of the law of marriage and divorce in this jurisdiction and a well established declaration of the state's public policy ever since its adoption in 1862. It has never been changed in its primal objective, that is, as a prohibition against the marriage of divorced persons for a certain period of time after the entry of the decree. The first amendment was made in 1913 (ch. 236, Or. Laws, 1913). The effect of this was to continue the inhibition against another marriage for a period of six months after the date of a divorce decree, notwithstanding that the right to take an appeal was, in the same legislative session, reduced from six months

to sixty days (ch. 319, Or. Laws, 1913). Otherwise, there have been no material changes or additions to the original act since that time, except in the addition of the proviso of 1939 (ch. 164, Or. Laws, 1939) which legitimized all children born of parents who married within the prohibited period.

The first time the act in question was construed by the court was in 1897, by the able and illuminating opinion of Mr. Justice ROBERT BEAN in *McLennan v. McLennan*, 31 Or. 480, 50 P. 802, 65 Am. St. Rep. 835, 38 L. R. A. 863. In that case it appears that the plaintiff was divorced in Multnomah county, Oregon, and 22 days thereafter married the defendant in Vancouver, Washington. Both parties to the marriage contract were, as were the parties to the alleged Ott marriage, residents of Oregon. It was there held that the marriage was absolutely void.

The next case in order directly attacking the validity of a premature marriage after divorce is *Hooper v. Hooper*, 67 Or. 187, 135 P. 205, 525. The Hooper case was a suit for the annulment of another Vancouver, Washington, marriage celebrated in that city within four months after the defendant had obtained a divorce in Washington county, Oregon. Predicated solely upon the rule laid down in the McLennan case, the Hooper alliance was declared void.

The rule of the McLennan case has ever since been our guiding star and followed and applied without deviation except in the minor respect hereinafter referred to. As was well said by Mr. Justice BURNETT in *Vnuk v. Patterson*, 118 Or. 602, 247 P. 766, 47 A. L. R. 394, as late as 1926 the doctrine announced in the McLennan and Hooper cases has "never been overturned or doubted." We are compelled to reiterate the same conclusion 25 years later.

The minor deviation from the tenor of the McLennan case above referred to is found in *Wallace v. McDaniel*, 59 Or. 378, 117 P. 314, L. R. A. 1916C 744, where the court, referring to § 9-916, O.C.L.A., then § 515, L.O.L., says, at page 383: "This section is penal in character." This is directly contra to the holding in the McLennan case (31 Or. 480) where it is said, at page 486: "The provision of our statute is not imposed as a punishment, nor is it penal in its character * * *." Insofar as the Wallace case so holds, it is now expressly overruled.

The McLennan and Hooper cases have also controlled our judgment when marriages have been collaterally attacked as being void under § 9-916. *Twigger v. Twigger*, 110 Or. 520, 223 P. 934; *Wallace v. McDaniel*, supra. Both were suits involving the determination of title to real property.

Counsel for appellant calls our attention to a series of validating acts passed by the Oregon legislature in the years 1901, 1913, 1919, 1923, 1929, 1939, 1941, 1945 and 1947, whereby all marriages made within the prohibited period of six months and prior to each of the several acts were validated, and urges that this legislation connotes a change in public policy warranting our relaxation of the doctrine laid down in the McLennan and Hooper cases. We cannot agree. It is noteworthy that the statutory rule laid down in 1862 has been the law of the state continuously for nearly 90 years without amendment disturbing the original concept of a waiting period between a divorce and a following marriage. Except for the minor amendments already reviewed maintaining the prohibitive period of six months notwithstanding a shortening of appeal time (ch. 326, Or. Laws, 1913) and the amendment of 1939 legitimizing children born to such void unions

(ch. 164, Or. Laws, 1939), there has been no change in the law as it existed at the time of the McLennan case. The legislative determination to adhere to this age-old policy in this state is signalized and emphasized by the fact that the acts hereinbefore referred to as the validating acts of 1913 and 1939 were incorporated as provisos to the amendments of those years (ch. 326, Or. Laws, 1913; ch. 164, Or. Laws, 1939). Moreover, each of the amending and validating laws last referred to repeated and re-enacted the existing statutory inhibition against marriage after divorce, as did the validation found in ch. 70, Or. Laws, 1941. The very form of the legislative validating provisions of 1913, 1939 and 1941, coupled as they are to reiterations of legislative adherence to the ancient proscript of too-early marriage after divorce, gives no warrant in saying there has been any change in the public policy in this state with reference to such marriages, even though we ourselves may think that the inhibition should be tempered. We also view as significant that two legislative sessions have met since 1947 (the date the last validating act was passed) without passing further legislation on the subject.

■ No doubt this legislative history of intermittent validations of palpably void marriages has inspired the romantic with false hopes that they, too, could successfully speculate on such an outcome and, with a spirit akin to a contemptuous regard for the Oregon law's clear and unambiguous interdiction, eventually attain legislative approbation for their untimely union. Although the law has declared such premature marriages null and void, there are other potential penalties which may arise as an incident to such improvident weddings. He or she who is inclined to flee from this state to marry in defiance of the provisions of § 9-916,

O.C.L.A., would do well to pause and weigh the cost of such a quickened status of matrimonial bliss when its price may be the embarrassment of criminal prosecution for bigamy or adultery and the certain loss of valuable interests and rights in property of the deceased putative spouse, if validation does not follow. The last is an unavoidable consequence of appellant's importunate misalliance with the decedent, Mr. Ott, for the court is left with no other alternative under the doctrine of *McLennan v. McLennan*, supra, except to declare the Idaho marriage void.

■ In so doing, the circuit court acted within the ambit of its jurisdiction in probate, in this instance conferred by the transfer of the matter from the county court under § 13-502, O.C.L.A. The duty to give preference to a decedent's widow when making the appointment of an administrator is directed by § 19-210, O.C. L.A., and carries with it the implied right to determine whether or not an applicant for appointment has, in fact, the qualifications for the preferential status claimed. *Re Estate of Roedler*, 110 Or. 147, 151, 222 P. 301. It also has the right to hear contests relative to an appointment previously made. 21 Am. Jur., Executors and Administrators, 436, § 110; 33 C. J. S., Executors and Administrators, 964, § 57.

The only other assignment of error requiring attention is the petitioner's challenge to the court's right to adjudicate title to the personalty of the estate.

The circuit court found that there was no partnership between the petitioner and the decedent and by its decree directed the petitioner to forthwith deliver to Robert V. Chrisman, as the administrator, all "personal property in her possession belonging to the estate of Albert Ott, deceased, including the hereinabove

described Mack truck, Frue trailer, Chevrolet sedan and automobile tires.''

■ The respondent-administrator attempts to justify this action on the ground that the issue of ownership was joined by the pleadings of the parties and, further, because no question of jurisdiction was raised by either at the time of trial. The answer to this contention is that parties contestant cannot, by stipulation or otherwise, enlarge the powers of a court of limited jurisdiction by conferring upon it the jurisdictional attributes of a court of general jurisdiction.

It is apparent that the administrator labors under the misapprehension that the transfer of this proceeding from the county court for Wallowa county to the circuit court for that county pursuant to the provisions of § 13-502, O.C.L.A., releases the probate proceeding from the incidents of limited jurisdiction which are characteristic of probate courts and subjects the proceeding to the general jurisdictional powers of the circuit court to which it is transferred. This is evident from the following statement from the administrator's brief:

> ''As in the case of RE Pittock's estate, 102 Or. 47, all proceedings were had and presided over by a learned Circuit Judge, just as qualified under the issues thus raised and submitted to him, as were the matter[s] separately presented to him in a different form of legal proceeding.''

We first observe that at no time has the Pittock case been authority for such a conclusion. The participation of the circuit court for Multnomah county in the Pittock estate was pursuant to powers conferred by ch. 59, Or. Laws, 1919, an act which abolished county courts in counties then having a population of 100,000 or more. Here the acquisition of jurisdiction by the

circuit court for Wallowa county was under § 13-502, O.C.L.A., which provides, so far as pertinent:

"Any contested probate matter in the county court, other than upon a creditor's claim for less than $500, shall, on motion made and filed by any party in interest, or on motion of the county court, at any time prior to the commencement of trial thereof on an issue of fact, forthwith be transferred by the county court, by order entered in its probate journal, to the circuit court in and for the county in which is pending the probate proceeding out of which such contest arose, and therein proceed and be tried and determined in the same manner and with like effect * * * as though it were proceeding and being tried and determined in the county court; and, to that end, there hereby are conferred upon, and vested in, the circuit court, exclusively, in, and as to, such transferred, contested probate matters all the jurisdiction and powers pertaining to a court of probate heretofore possessed in the first instance by the county court, provided, however, that upon the final determination of such transferred, contested probate matter, the county court shall resume jurisdiction thereof, and pending such determination, the county court shall proceed with all uncontested matters in the probate proceeding."

That statute itself carries its own answer. It limits the circuit court's powers in the premises by the declaration that the contested matter shall "therein proceed and be tried and determined in the same manner and with like effect * * * as though it were proceeding and being tried and determined in the county court." Also see *Van Vlack v. Van Vlack*, 181 Or. 646, 182 P. 2d 969, 185 P. 2d 575, where this court said, at page 666: "Moreover, a probate court, whether sitting in its ancient home or in the courtroom of our circuit court, is one of limited jurisdiction."

■ It follows that whenever a probate matter is transferred from a county court to a circuit court under § 13-502, O.C.L.A., the circuit court merely acquires a new duty, or, to put it otherwise, the proceeding acquires a new judge whose powers and jurisdiction in the transferred proceeding are identical with and no greater than those which could have been exercised in the premises by the county court from whence the matter came, if the subject of the contest was within the jurisdiction of the county court and had been tried therein. Such a transfer results only in a change of forum without an enhancement of judicial power.

■ In the recently decided case of *Arnold v. Arnold,* 193 Or. 490, 237 P.2d 963, we said:

"While county courts, sitting in probate, were courts of general jurisdiction, the particular powers exercised were only such as pertained to probate courts at the time of the adoption of the Constitution or were conferred by statute. In re Stroman's Estate, 178 Or. 100, 165 P. 2d 576."

We there also held:

"They did not include the power or authority to determine a dispute between the administrator of an estate and a third person concerning the title to property. Such a question, if an adjudication became necessary, must have been tried in a court of ordinary jurisdiction. Hillman v. Young, 64 Or. 73, 81, 127 P. 793, 129 P. 124; Harrington v. Jones, 53 Or. 237, 239, 99 P. 935; Dray v. Bloch, 29 Or. 347, 45 P. 772; Gardner v. Gillihan, 20 Or. 598, 27 P. 220."

■ The foregoing conclusions dictate that the decree of the lower court must be affirmed insofar as it declares the purported Idaho marriage null and void and reversed as to its finding of title as to the personal property in which the petitioner claims an ownership interest.