[Civ. No. 6156.   Fourth Dist.   June 21, 1960.]

ISABELLE G. JONES, Appellant, v. BURTON I. JONES, Respondent.

Ashley & Brady and John A. Brady for Appellant.

Jennings, Engstrand & Henrikson and Paul D. Engstrand, Jr., for Respondent.

COUGHLIN, J.—The plaintiff brought this action to obtain a divorce from the defendant who cross-complained seeking an annulment of their marriage. An annulment was granted and the plaintiff appeals.

For several years prior to June, 1956, the plaintiff resided

in the State of Oregon during which time she was the wife of Draper Santry. She became estranged from her husband; had not lived with him for a considerable period of time; in May of that year met the defendant; in June of that same year filed an action for divorce from Santry; and on July 9, 1956, obtained a decree of divorce through the Circuit Court of the State of Oregon. Her divorce proceedings were a part of the plans agreed upon between herself and the defendant whereby they were to be married in Santa Barbara, California, on July 28, 1956. Pursuant to these plans the plaintiff left Oregon immediately following entry of the divorce decree; went to Santa Barbara; married the defendant on the scheduled date; and thereafter lived with him as his wife, in California, until her separation a few months before the commencement of this action.

The defendant contends that his marriage to plaintiff is invalid because, at the time thereof, she was not legally capable of entering into a marriage; that her Oregon divorce decree did not terminate her prior marriage so as to enable her to marry again until the expiration of six months.

■ The validity of a marriage, ordinarily, is determined by the laws of the state in which it is contracted. (*Colbert* v. *Colbert,* 28 Cal.2d 276, 280 [169 P.2d 663]; *Mohn* v. *Tingley,* 191 Cal. 470, 476 [217 P. 733]; *Estate of Sanders,* 147 Cal.App.2d 450, 454 [305 P.2d 655]; *Estate of Keig,* 59 Cal.App.2d 812, 816 [140 P.2d 163].) Section 61 of the Civil Code declares that a subsequent marriage contracted by any person during the life of a former spouse, other than with such spouse, is illegal and void, ''unless the former marriage has been annulled or dissolved.''

■ The effect of a decree of divorce is determined by the laws of the state in which it is obtained. (*Estate of Sanders,* 147 Cal.App.2d 450, 452 [305 P.2d 655]; *Estate of Winder,* 98 Cal.App.2d 78, 87 [219 P.2d 18]; *Means* v. *Means,* 40 Cal.App.2d 469 [104 P.2d 1066]; *People* v. *Goddard,* 84 Cal.App. 382 [258 P. 447]; *People* v. *Woodley,* 22 Cal.App. 674, 676 [136 P. 312].)

By statute the law of Oregon provides that: ''A decree declaring a marriage void or dissolved at the suit or claim of either party shall have the effect to terminate such marriage as to both parties, *except* that neither party shall be capable of contracting marriage with a third person, and if he or she does so contract, shall be liable therefor as if said decree had not been given, until the suit has been heard and

determined on appeal; but in no case until the expiration of six months from the date of said decree.'' (Emphasis added.) (See *In re Ott's Estate,* 193 Ore. 262, 279 [238 P.2d 269, 271].)

The effect of a statute requiring parties in a divorce proceeding *to wait a stated period of time after rendition of the divorce decree* before entering into marriage with another person, depending upon the language used therein, generally is either (1) to prohibit the subsequent marriage and invoke a prescribed penalty for violation without affecting its validity, or (2) to maintain the former marriage in force for the stated period and thus render void any subsequent marriage contracted within that time. ▌ The statute of another state which imposes only a prohibition upon a subsequent marriage within the designated waiting period constitutes the adoption of a policy which will not be enforced extraterritorially in this state. (*Estate of Wood,* 137 Cal. 129, 135 [69 P. 900]; *Estate of Winder,* 98 Cal.App.2d 78, 87 [219 P.2d 18]; *People* v. *Woodley,* 22 Cal.App. 674 [136 P. 312].) ▌ On the other hand, where the statute of another state continues the marriage of parties to a divorce proceeding in force during the prescribed period after rendition of that decree, it determines the status of the parties during that time, and controls the decision of the courts of this state when their status is in issue even though it also effects a waiting period policy. (*Means* v. *Means,* 40 Cal.App.2d 469 [104 P.2d 1066]; *People* v. *Woodley,* 22 Cal.App. 674, 676 [136 P. 312].) ▌ When a question arises in the courts of this state as to the construction or effect of a statute of another state, our courts will follow the interpretation placed upon such statute by the court of last resort of the enacting state. (*Hospelhorn* v. *Van Dusen,* 40 Cal.App.2d 257, 259 [104 P.2d 888]; *Interstate Lumber Co.* v. *Tweedy,* 28 Cal.App.2d 208, 209 [82 P.2d 208]; *People* v. *Goddard,* 84 Cal.App. 382, 386 [258 P. 447].)

In *McLennan* v. *McLennan,* 31 Ore. 480 [50 P. 802, 803, 38 L.R.A. 863, 65 Am.St.Rep. 835], the Supreme Court of Oregon held that a decree of divorce, although terminating a marriage for all other purposes, did not terminate it for the purpose of enabling either of the parties to marry another person until the expiration of six months after entry of the decree, and that a subsequent marriage before expiration of that period of time was void. In this case the plaintiff obtained a decree of divorce in Oregon and, before the ex-

piration of the six months period, entered into a marriage in the State of Washington. The court said:

"It is clear that a marriage in this state in violation of this section would be null and void, because, by its provisions, the parties are incapable of entering into such a relation within the time specified, for the reason that the decree does not to that extent terminate the former marriage. . . . Until the expiration of such time, the status of the parties, so far as the right to remarry is concerned, remains the same as if no decree had been rendered. . . . During that time the decree is suspended or inoperative to that extent, and both parties, without regard to their guilt, are utterly powerless to make a valid contract of marriage with a third person. It will be observed that the statute declares that neither party to the decree shall be capable of contracting marriage with a third person during the time such decree is subject to review by an appellate tribunal, and not merely that it shall not be lawful for them to do so. It goes directly to their ability or capacity to contract, and there is a distinction made in the books between the marriage of divorced parties declared by law incapable of remarrying and a marriage in violation of some statutory prohibition penal in its nature. In the one case the marriage is absolutely void, and in the other it is often held to be valid, although the party may be punished criminally for violating the prohibitory statute. . . . Indeed, it is not seriously contended that a marriage contracted in this state within the prohibited time would be valid; but the contention is that, as the marriage in question was solemnized in the state of Washington, the plaintiff was freed from the restraint imposed upon her by the decree of divorce. The general rule is unquestioned that a marriage between persons sui juris, valid where solemnized, is valid everywhere; but this plaintiff, having been previously married, and her former husband being alive, could not contract a second valid marriage anywhere, unless the incapacity arising from her previous marriage had been at the time effectively and completely removed by a decree of divorce, and this was not the case at the time of the solemnization of the marriage between plaintiff and defendant, because the statute under which the decree was obtained provided that the divorce did not completely sever the tie of marriage, so as to enable either to become a party to a new one, until the lapse of a specified time after the decree, and her marriage was contracted in violation of this statute. . . . The provision of

our statute is not imposed as a punishment, nor is it penal in its character, but applies to the innocent as well as the guilty. It goes to the capacity of either party to remarry within the prescribed time, . . ." (*McLennan* v. *McLennan*, 31 Ore. 480 [50 P. 802, 803, 38 L.R.A. 863, 65 Am.St.Rep. 835].)

This decision was followed in the case of *Hooper* v. *Hooper*, 67 Ore. 187 [135 P. 525] even though in the interim, the Oregon court had said that the statute in question was "penal in character," a statement later disapproved. (*Wallace* v. *McDaniel*, 59 Ore. 378 [117 P. 314, 315, L.R.A. 1916C 744].) However, an interpretation contrary to the original holding is intimated in the later case of *Twigger* v. *Twigger*, 110 Ore. 520 [223 P. 934], which considered the effect of a curative statute declaring marriages contracted within the six-month period after decree to be valid. In the course of its opinion the court stated that the decision in *McLennan* v. *McLennan*, 31 Ore. 480 [50 P. 802, 38 A.L.R. 863, 65 Am.St.Rep. 835], was based on "legislation in its then condition," intimating that there had been a change in the statute. However, no material change had occurred. The court then proceeded to state that none of the prior Oregon decisions went "so far as to say that the marriage would be otherwise than valid for all purposes in Washington," although it then was considering only the validity of the subject marriage in Oregon and held it to be valid under the curative statute. The reason for the observation with respect to the validity of the subject marriage in Washington is not clear and, as indicated in the opinion of the trial court in the case at bar, may be pure dicta. Nevertheless, after the decision in *Twigger* v. *Twigger*, *supra*, 110 Ore. 520 [223 P. 934], a California court held that the subsequent marriage in California of a party to an Oregon divorce within the six-month period, was valid (*People* v. *Goddard*, 84 Cal.App. 382 [258 P. 447]) and, after quoting from the case of *Twigger* v. *Twigger*, 110 Ore. 520 [223 P. 934], said:

"These authorities lead us to the conclusion that the highest court of Oregon has decided that that court has never held that the Oregon laws of divorce have any extraterritorial application to marriage contracted in some other state. We are entitled, therefore, to assume that the law of Oregon is the same as the law of the state of California." (*People* v. *Goddard*, 84 Cal.App. 382, 386 [258 P. 447].)

However, the California court did not consider the case of

*Vnuk* v. *Patterson*, 118 Ore. 602 [247 P. 766, 769, 47 A.L.R. 394], decided in the previous year, which approved and applied the doctrine of the McLennan case (*McLennan* v. *McLennan, supra*, 31 Ore. 480 [50 P. 802]) and clearly indicated that a subsequent marriage within the six-month period was invalid in Oregon, not because the statute prohibited such a marriage, but because, under the statute, the parties were incapable of contracting such a marriage.

Previously another California court, in considering the effect of the Oregon divorce statute, declared that the doctrine of the McLennan case (*McLennan* v. *McLennan, supra*, 31 Ore. 480 [50 P. 802]) had been overruled by the decisions in *Wallace* v. *McDaniel*, 59 Ore. 378 [117 P. 314, L.R.A. 1916C 744], heretofore referred to, and in *State* v. *Leasia*, 45 Ore. 410 [78 P. 328], which held that a wife who had obtained a decree of divorce might testify against her husband in a criminal case even though the time for appeal therefrom, or its equivalent six-month period, had not expired. (*People* v. *Woodley*, 22 Cal.App. 674, 677 [136 P. 312].) The decision in *State* v. *Leasia*, however, did not consider the effect of the divorce decree upon the status of a party to marry another within the designated period.

Since the Goddard case (*People* v. *Goddard, supra*, 84 Cal. App. 382), the Supreme Court of Oregon has reiterated the rule declared in *McLennan* v. *McLennan, supra*, 31 Ore. 480 [50 P. 802], by stating:

"The first time the act in question was construed by the court was in 1897, by the able and illuminating opinion of Mr. Justice Robert Bean in *McLennan* v. *McLennan*, . . . It was held that the marriage was absolutely void.

"The next case in order directly attacking the validity of a premature marriage after divorce is *Hooper* v. *Hooper*, 67 Ore. 187 [135 P. 205, 525]. The Hooper case was a suit for the annulment of another Vancouver, Washington, marriage celebrated in that city within four months after the defendant had obtained a divorce in Washington county, Oregon. Predicated solely upon the rule laid down in the McLennan case, the Hooper alliance was declared void.

"The rule of the McLennan case has ever since been our guiding star and followed and applied without deviation except in the minor respect hereinafter referred to. As was well said by Mr. Justice Burnett in *Vnuk* v. *Patterson*, 118 Ore. 602 [247 P. 766, 769, 47 A.L.R. 394], as late as 1926 the doctrine announced in the McLennan and Hooper cases

has 'never been overturned or doubted.' We are compelled to reiterate the same conclusion 25 years later.

''The minor deviation from the tenor of the McLennan case above referred to is found in *Wallace* v. *McDaniel*, 59 Ore. 378, at page 383 [117 P. 314, at page 315, L.R.A. 1916C, 744], where the court referring to Sec. 9-916, O.C.L.A., then Sec. 515, L.O.L., says: 'This section is penal in character.' This is directly contra to the holding in the McLennan case, 31 Ore. 480 at page 486, 50 P. at page 803, where it is said: 'The provisions of our statute is not imposed as a punishment, nor is it penal in character. . . .' Insofar as the Wallace case so holds, it is now expressly overruled.

''The McLennan and Hooper cases have also controlled our judgment when marriages have been collaterally attacked as being void under Sec. 9-916. *Twigger* v. *Twigger*, 110 Ore. 520, 223 P. 934; *Wallace* v. *McDaniel, supra.* Both were suits involving the determination of title to real property.'' (*In re Ott's Estate*, 193 Ore. 262, 279 [238 P.2d 269, 271].)

It appears that the basic determination of the McLennan case (*McLennan* v. *McLennan, supra,* 31 Ore. 480 [50 P. 802] is the law of Oregon at this time, i.e., that under the statute in question, until the expiration of the stated period of time ''the status of the parties, so far as the right to remarry is concerned, remains the same as if no decree had been rendered'' (50 P. 802, 803) ; ''During that time the decree is suspended or inoperative to that extent . . .'' (50 P. 802, 803) ; and ''. . . the parties are incapable of entering into such a relation within the time specified, for the reason that the decree does not to that extent terminate the former marriage.'' (50 P. 802.)

The issue for determination in the case at bar does not concern the status in Oregon of the marriage of the parties to this action, but rather the status of the plaintiff at the time of the rendition of her Oregon divorce decree. The only Oregon decision which has spelled out the effect of a decree on the marriageable status of a party thereto, i.e., legal capacity to marry another, is in the case of *McLennan* v. *McLennan, supra,* 31 Ore. 480 [50 P. 802]. The holding in *Wallace* v. *McDaniel, supra,* 59 Ore. 378 [117 P. 314] that the provisions of the statute which continue the incapacity of a married person to marry another during the six months after obtaining a divorce decree are penal in nature, was expressly overruled by the latest decision of the Oregon Supreme Court upon the subject, i.e., *In re Ott's Estate*, 193 Ore. 279 [238 P.2d 269].

The intimation in the Twigger opinion (*Twigger* v. *Twigger, supra,* 110 Ore. 520 [223 P. 934] that this statute terminated the marriage status for *all* purposes and imposed merely a prohibition against a subsequent marriage within the six-month period, enforceable only in Oregon, is in similar conflict with the Ott's Estate decision (*In re Ott's Estate,* 193 Ore. 262, 279 [238 P.2d 269]), and is not controlling. Where there is a conflict between opinions of the same court on a given principle of law the latest thereof should be given preference. (*Estate of Keig,* 59 Cal.App.2d 812, 816-817 [140 P.2d 163].)

We conclude that the decree of divorce obtained by the plaintiff in Oregon did not terminate her marriage to Santry for the purpose of enabling her to marry another until the expiration of six months from the date of that decree. Therefore, the marriage of plaintiff and defendant in California was void under the provisions of section 61 of the Civil Code, and the determination of the trial court accordingly was proper.

The plaintiff further contends that her marriage to the defendant was validated by a curative statute passed by the Oregon legislature pending the appeal in this matter, i.e., on April 14, 1959. Under the authorities heretofore noted this statute would have no extraterritorial effect; would validate marriages under consideration by the courts of Oregon (*Twigger* v. *Twigger,* 110 Ore. 520 [223 P. 934]); but would not be binding upon or enforced by the courts of California. Moreover, as contended by the defendant, the state of the law as of the date of rendition of the judgment herein would control in determining its correctness. (*Barry* v. *Barry,* 124 Cal.App.2d 107, 112 [268 P.2d 147].)

The judgment is affirmed.

Shepard, Acting P. J., and Shea, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.